**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MORRIS FIDDLER, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 08C416 |
| v. | ) ) | |
| | ) | Judge Der-Yeghiayan |
| AT&T MOBILITY LLC, d/b/a The New AT&T f/k/a CINGULAR WIRELESS, a Delaware limited liability company, M-QUBE, INC., a Delaware corporation, and VERISIGN, INC., a Delaware corporation, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S
MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS**
_____

Dated: February 7, 2008

Victoria R. Collado
Sarah E. Reynolds
Keonna Carter
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711

Seamus C. Duffy
　(Of Counsel)
Maresa Torregrossa
　(Of Counsel)
DRINKER BIDDLE & REATH LLP
1 Logan Square, 18th and Cherry Streets
Philadelphia, PA 19103-6996
Tel:  (215) 988-2700
Fax: (215) 988-2757

Evan M. Tager
　(*pro hac vice* application pending)
Archis A. Parasharami
　(Of Counsel)
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Tel: (202) 263-3000
Fax: (202) 263-3300

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

    A.    Fiddler Agrees To Resolve Any Dispute He Might Have With ATTM Either Through Individual Arbitration Or In Small Claims Court. ........................... 1

    B.    ATTM's Arbitration Provision Is Uniquely Favorable To Consumers. ................ 2

    C.    Fiddler Violates His Agreement By Pursuing This Lawsuit. ............................... 4

ARGUMENT ................................................................................................................. 5

I.    THE CLASS-ARBITRATION WAIVER IN FIDDLER'S ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER ILLINOIS LAW .................... 6

    A.    Fiddler's Arbitration Agreement Is Not Procedurally Unconscionable. .............. 6

    B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable. ................ 8

II.    ANY ARGUMENT THAT *KINKEL* REQUIRES INVALIDATION OF ATTM'S ARBITRATION PROVISION WOULD RUN AFOUL OF THE FAA. ....................... 11

    A.    Express Preemption ........................................................................................ 11

    B.    Conflict Preemption ....................................................................................... 13

CONCLUSION ............................................................................................................ 15

# TABLE OF CASES

**CASES**

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ........................................ 15

*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455 (10th Cir. 1995)........................................... 14

*Bess v. DirecTV, Inc.*, __ N.E.2d __, 2007 WL 2013613 (Ill. App. Ct. July 10, 2007) .... 5, 6, 7, 8

*Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281,
   (Mo. Cir. Ct. Nov. 28, 2005)........................................................................................... 15

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)................................. 13, 15

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002)................................................................. 8

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) .................................... 12

*Calvin v. Sheriff of Will County*, 405 F. Supp. 2d 933 (N.D. Ill. 2005)...................................... 15

*Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903 (7th Cir. 2004)..................................... 7

*Deaton v. Overstock.com, Inc.*, 2007 WL 4569874 (S.D. Ill. Dec. 27, 2007) ............................. 9

*Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695 (E.D. Wis. 2005)....................................... 15

*Doctor's Assocs. v. Casarotto*,  517 U.S. 681 (1996)................................................................. 11

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ............................................................................... 13

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002)........................................................................ 5

*Gay v. CreditInform*, 511 F.3d 369, 2007 WL 4410362
   (3d Cir. Dec. 19, 2007) ....................................................................................... 12, 13, 15

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).................................................. 12

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) .................................................... 15

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) ........... 11, 12

*Kinkel v. Cingular Wireless LLC*, 857 N.E. 2d 250 (Ill. 2006) ...........................................*passim*

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ............................................................................... 14

*Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51 (Ariz. 1995) ................................................... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).......................... 5, 13

## TABLE OF CASES
(continued)

Page(s)

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) .............................................................................................................. 13

*Oblix, Inc. v. Winiecki*, 374 F.3d 488 (7th Cir. 2004) ............................................ 7, 12

*Perry v. Thomas*, 482 U.S. 483 (1987) ................................................................ 11, 12

*Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040 (N.D. Ill. Dec. 7, 2007) ................ 9, 10

*Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351 (Tenn. Ct. App. 2001) .................... 15

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997) ............................... 15

*Razor v. Hyundai Motor Am.*, 854 N.E.2d 607 (Ill. 2006) ........................................... 8

*Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685 (N.D. W. Va. 2005) ...... 15

*Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007) ........... 15

*United States v. Corum*, 362 F.3d 489 (8th Cir. 2004) ............................................... 5

*United States v. Locke*, 529 U.S. 89 (2000) ............................................................ 13

*Wise v. Wachovia Sec., LLC*, 450 F.3d 265 (7th Cir. 2006) ..................................... 14

## STATUTES, RULES AND REGULATIONS

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ................................................................. 1

9 U.S.C. § 2 ................................................................................................... *passim*

9 U.S.C. § 10 ................................................................................................... 14

15 U.S.C. § 1681n ............................................................................................. 10

Illinois Consumer Fraud and Deceptive Practices Act, ILCS 505/1 *et seq.* ........... 5, 10

205 ILCS 690/35 .............................................................................................. 10

210 ILCS 35/10(6) ........................................................................................... 10

720 ILCS 5/16D-1 *et seq.* ................................................................................ 5, 10

Fed. R. Civ. P. 11(b) .......................................................................................... 2

ii

**TABLE OF CASES**
(continued)

Page(s)

**OTHER AUTHORITIES**

Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*,
59 VAND. L. REV. 729 (2006) ............................................................ 12

*Joint Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the
Judiciary*, 68th Cong., 1st Sess. 7 (1924) .......................................... 13

Jonathan R. Bunch, Note, *To Be Announced: Silence from the United States Supreme
Court and Disagreement Among Lower Courts Suggest an Uncertain Future for
Class-Wide Arbitration*, 2004 J. DISP. RESOL. 259 ............................................ 14

## INTRODUCTION

Defendant AT&T Mobility LLC ("ATTM"), formerly known as Cingular Wireless, respectfully moves to compel arbitration and to dismiss all claims against it. When plaintiff Morris Fiddler activated his wireless service with ATTM, he agreed to pursue any disputes on an individual basis in arbitration or small claims court. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires Fiddler to honor his obligation.

Fiddler will likely argue that, under the Illinois Supreme Court's decision in *Kinkel v. Cingular Wireless LLC*, 857 N.E. 2d 250 (Ill. 2006), his agreement to arbitrate claims on an individual (rather than class-wide) basis is unenforceable. In *Kinkel*, the court invalidated an earlier version of a Cingular Wireless arbitration provision because "the agreement containing the [class-arbitration] waiver [was] burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Id.* at 274.

But ATTM's current arbitration provision fully addresses the concerns identified in *Kinkel*. The current provision obligates ATTM to pay not only all of the costs of any non-frivolous arbitration but also attorneys' fees to the full extent required by law. In addition, the provision creates unprecedented incentives for customers to pursue claims on an individual basis: If an arbitral award exceeds the amount of ATTM's last settlement offer, ATTM must pay the customer $10,000 or the amount of the award, whichever is higher, plus double attorneys' fees even if the applicable law does not provide for attorneys' fees at all. These features satisfy *Kinkel* by ensuring that, under ATTM's provision, Fiddler—as well as other Illinois customers— may "obtain a remedy for the particular claim being asserted in a cost-effective manner." *Id.*

Moreover, if *Kinkel* were construed to require invalidation of ATTM's unprecedentedly pro-consumer arbitration provision, it would be preempted by the FAA.

## BACKGROUND

### A.    Fiddler Agrees To Resolve Any Dispute He Might Have With ATTM Either Through Individual Arbitration Or In Small Claims Court.

Fiddler, an Illinois resident (Compl. ¶ 2), activated service from ATTM in November 2005 by executing a Wireless Service Agreement ("WSA") via electronic signature. *See* Declaration of Neal S. Berinhout ("Berinhout Decl.") ¶¶ 32. That agreement incorporated standard

Terms of Service that included an arbitration provision.  *See id.* ¶ 33 & Ex. 12.[1]

In December 2006, ATTM revised its arbitration provision in an effort to provide greater incentives for consumers and their lawyers to resolve their disputes through individual arbitration.  *See* Berinhout Decl. ¶¶ 7-8.  ATTM provided Fiddler with a copy of the new provision in the envelope containing his December 2006 bill.  *Id.* ¶¶ 10, 34 & Ex. 1.[2]  The revised provision, like the version that it replaced, requires all disputes between Fiddler and ATTM to be resolved either in small-claims court or through individual, as opposed to class-wide, arbitration.  *Id.* Ex. 2.  In relevant part, ATTM's arbitration provision states:

> AT&T [Mobility] and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:  claims arising out of or relating to any aspect of the relationship between us * * * [and] claims that arose before this or any prior Agreement * * *.

Berinhout Decl. Ex. 2 § 1.

### B.      ATTM's Arbitration Provision Is Uniquely Favorable To Consumers.

ATTM's arbitration provision is designed to facilitate—quickly and inexpensively—the resolution of disputes that have not already been resolved by means of a phone call or e-mail to ATTM's customer service specialists.  Richard Nagareda, a law professor at Vanderbilt University whose scholarship focuses on aggregate dispute resolution, observes that he has "never seen an arbitration provision that has gone as far as this one to provide incentives for consumers and their prospective attorneys to bring claims" on an individual basis.  Declaration of Richard A. Nagareda ¶ 11.  The provision includes the following features that are beneficial to consumers:

- **Cost-free arbitration:**  "[ATTM] will pay all [American Arbitration Association ("AAA")] filing, administration and arbitrator fees" unless the arbitrator determines that the claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[3]

---

[1]      Fiddler activated wireless service for a second ATTM account in October 2006.  *See* Berinhout Decl. ¶ 36.  His WSA for that account also incorporated terms of service that included an arbitration provision.  *Id.* ¶ 37 & Ex. 16.

[2]      To ensure that Fiddler was aware of the change, ATTM also included a notice of the revision in Fiddler's December 2006 and his January, February, and March 2007 bills.  *Id.* ¶¶ 35-35 & Exs. 13, 14.  ATTM also slightly clarified the language of the revised provision in January 2007.  *Id.* ¶ 11 & Ex. 2.

[3]      In the event that an arbitrator concludes that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap a consumer's arbitration costs at $125.  *See* Berinhout Decl. Exs. 6, 7 (AAA, Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes ("*AAA Consumer Procedures*") § C-8).

- **$10,000 minimum award:** If the arbitrator issues an award in favor of an Illinois customer that is greater than "[ATTM]'s last written settlement offer made before an arbitrator was selected" but less than $10,000, ATTM will pay the customer $10,000 rather than the smaller arbitral award;[4]

- **Double attorneys' fees:** If the arbitrator awards a customer more than ATTM's last written settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that [the customer's] attorney reasonably accrues for investigating, preparing, and pursuing [his] claim in arbitration";[5]

- **Small claims court option:** Either party may bring a claim in small claims court;

- **Geographic proximity:** Arbitration will take place "in the county * * * of [the customer's] billing address";

- **No confidentiality requirement:** The arbitration need not be kept confidential;

- **Punitive damages available:** The arbitration provision does not place any limits on the arbitrator's authority to award punitive damages;

- **AAA consumer procedures:** Arbitration will be conducted under the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes;

- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, customers like Fiddler have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator";[6] and

- **ATTM disclaims right to seek attorneys' fees in arbitration:** "Although under some laws [ATTM] may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, [ATTM] agrees that it will not seek such an award [from the customer]."

Berinhout Decl. Ex. 2.

Of course, ATTM hopes that customers do not have to resort to arbitration or small claims court to obtain redress. As a service provider, customer service is extremely important to ATTM's reputation and its relationship with its customers. Accordingly, the vast majority of disputes are resolved by ATTM's customer care department by phone or e-mail. *Id.* ¶ 16. For

---

[4]　　The amount of the minimum payment varies from state to state because it is tied to the jurisdictional maximum of the customer's local small claims court. Berinhout Decl. Ex. 2 § 4. In Illinois, the jurisdictional limit for small claims court is $10,000. *See* Ill. Sup. Ct. R. 281.

[5]　　This attorney premium "supplements any right to attorneys' fees and expenses [that Fiddler] may have under applicable law." Berinhout Decl. Ex. 2 § 5. In other words, even if an arbitrator were to award Fiddler less than ATTM's last settlement offer, he would be entitled to an award of attorneys' fees to the same extent as if his claim had been brought in court.

[6]　　Under the AAA rules that would otherwise apply, *either* party may insist on a hearing in cases involving claims of $10,000 or less. Berinhout Decl. Exs. 6-7 (*AAA Consumer Procedures* §§ C-5, C-6). For claims exceeding $10,000, a hearing would be held unless both parties agreed to forgo it. *Id.*

example, in November 2007 (the most recent month for which figures are available), ATTM's customer service representatives dispensed about $116 million in credits for customer concerns and complaints. *Id.* Over the preceding twelve months, more than $1 billion in credits were issued. *Id.* And the vast majority of billing problems, including claims by customers that unauthorized or inaccurate charges have appeared on a bill, are quickly resolved by ATTM's customer care department either by explaining the nature of the charges to the satisfaction of the customer or by eliminating the charges from the bill. *Id.* ¶ 15.

Should a customer still have a concern, he or she can take the next step—as required by ATTM's arbitration provision—of providing ATTM with notice of the dispute. That is as simple as sending a letter to ATTM or filling out and mailing a one-page Notice of Dispute form that ATTM has posted on its website (at http://www.att.com/arbitration-forms). *Id.* ¶ 15, 18 & Ex. 8.

ATTM will generally respond to the Notice of Dispute by making a written settlement offer. *See* Berinhout Decl. ¶ 20. If ATTM and the customer are unable to resolve the dispute within 30 days, the customer may begin the arbitration process. *Id.* ¶ 21. To do so, the customer simply fills out a one-page Demand for Arbitration form and sends copies to the AAA and to ATTM. The AAA has posted a model Demand for Arbitration form on its website, (*see* http://www.adr.org), and ATTM has also posted a simplified demand form on its website (at http://www.att.com/arbitration-forms). *Id.* ¶¶ 13, 21 & Exs. 4, 5. To further assist its customers, ATTM has posted on its website a layperson's guide on how to arbitrate a claim. *Id.* ¶ 12 & Ex. 3 (http://www.att.com/arbitration-information).

In those rare instances in which ATTM's customer service department is unable to adequately address a customer's concerns, individual arbitration is a viable dispute resolution mechanism: In 2007, ATTM received over 540 notices of disputes or demands for arbitration under ATTM's provision. *Id.* ¶ 19.

### C.    Fiddler Violates His Agreement By Pursuing This Lawsuit.

Despite agreeing to arbitrate all disputes against ATTM (or to bring them in small claims court), Fiddler filed this complaint against Defendants ATTM, VeriSign, Inc. and m-Qube, Inc.[7] Fiddler alleges that ATTM customers were improperly charged for "premium mobile content" such as text messages, ringtones, and the like. *See* Compl. ¶¶ 6-13. He alleges that ATTM has

---

[7]    Fiddler alleges that m-Qube, Inc., is an "aggregator" that "processes mobile payments on its behalf and on behalf of carriers, other aggregators and third party mobile content providers," and that Verisign, Inc. acquired m-Qube in May 2006. Compl. ¶¶ 4-5.

breached its contracts with its customers (*id.* ¶¶ 51-58) and has violated the Illinois computer tampering statute, 720 ILCS 5/16D-3, and the Illinois Consumer Fraud and Deceptive Business Practices Act (*see* Compl. ¶¶ 69-80). He also seeks to represent a putative class of Illinois customers. *See id.* ¶¶ 43-50. He requests, *inter alia*, declaratory relief, damages, injunctive relief, and attorneys' fees and costs. *Id.* at Prayer For Relief.

Because Fiddler's lawsuit against ATTM breached his agreement to arbitrate, ATTM sent his counsel a letter requesting that his client pursue his claims against ATTM either through individual arbitration or in small claims court. Ex. 1. To date, Fiddler has not done so. Ex. 2

## ARGUMENT

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements * * *[,] to place [these] agreements upon the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quotation marks omitted). Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Here, there can be no doubt that Fiddler's agreement to arbitrate is covered by the FAA and that his claims are within the scope of the provision.[8] We nevertheless anticipate that Fiddler will contend that his arbitration agreement is unenforceable because it requires arbitration on an individual as opposed to class-wide basis. Any such arguments would lack merit.

## I.    THE CLASS-ARBITRATION WAIVER IN FIDDLER'S ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER ILLINOIS LAW.

Illinois recognizes that the concept of unconscionability has both procedural and substantive aspects. "A finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel*, 857 N.E.2d at 263; *see also Bess v. DirecTV, Inc.*, ___ N.E.2d ___, 2007 WL 2013613, at *7 (Ill. App. Ct. July 10, 2007). In *Kinkel*,

---

[8]    The FAA applies if the arbitration agreement is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: ATTM's arbitration provision is in writing, and Fiddler's agreement involves interstate commerce. "It is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004). In addition, the arbitration provision specifies that it is covered by the FAA. Berinhout Decl. Ex. 2 § 1. And the scope of the arbitration agreement is as broad as possible: It covers "**all disputes and claims**" between ATTM and Fiddler. *Id.* (emphasis in original).

the Illinois Supreme Court held that an earlier version of ATTM's (then Cingular's) arbitration provision—used in contracts between 2001 and early 2003—was procedurally and substantively unconscionable. 857 N.E.2d at 266, 274–75, 278. But the court explicitly reserved judgment on the more pro-consumer arbitration provision that ATTM promulgated in 2003, which in turn has been superseded by the even more pro-consumer provision at issue in this case. *See id.* at 275. And in *Bess*, the Illinois Appellate Court held that an arbitration provision in DirecTV's agreements with its customers was procedurally unconscionable to such an extent that the provision was invalid without regard to its substance. 2007 WL 2013613, at *7–*8. As we explain below, ATTM's current arbitration provision lacks the flaws identified in *Kinkel* and *Bess*, and is thus neither procedurally nor substantively unconscionable. Accordingly, it is fully enforceable.

**A.    Fiddler's Arbitration Agreement Is Not Procedurally Unconscionable.**

Under Illinois law, "[p]rocedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Kinkel*, 857 N.E.2d at 264 (citation and quotation marks omitted). "Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability." *Id.* (quotation marks omitted).

In *Kinkel*, the Illinois Supreme Court held that Cingular's 2001 arbitration provision implicated "a degree of procedural unconscionability" because it merely stated that "fee information" was available "upon request" rather than specifying the actual cost to the customer to arbitrate a claim. *Id.* at 266. In *Bess*, the Illinois Appellate Court held that DirecTV's arbitration provision implicated "procedural unconscionability [that] is sufficient to invalidate the arbitration provision" because the non-negotiable arbitration provision was hidden at the end of a series of terms printed "in single-spaced lines of very small font" and because the provision was not mailed to the customer until the customer had already become a subscriber and purchased "satellite television equipment." 2007 WL 2013613, at *6–*7. The court found it significant that a DirecTV customer could not avoid accepting the arbitration provision without paying a "deactivation fee" to cancel his contract; in addition, the court concluded that the customer could not obtain "reimbursement of [the] equipment costs." *Id.* at *6–*7.

- 6 -

Under the standards set forth in *Kinkel* and *Bess*, Fiddler's agreement is not procedurally unconscionable.  To be sure, his service agreement is a form contract like the ones in *Kinkel* and *Bess*.  But as the Illinois Supreme Court made clear, it is not necessarily procedurally unconscionable to use contractual terms that are "nonnegotiable and presented in fine print in language that the average consumer might not fully understand."  *Kinkel*, 857 N.E.2d at 266.  Rather, "[c]onsumers routinely sign such agreements"—as they "are a fact of modern life"—and hence "[i]t cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable."  *Id.*; *see also Bess*, 2007 WL 2013613, at *5 ("the fact that a contract is offered in a form contract on a take-it-or-leave-it basis does not automatically render a contract term procedurally unconscionable") (quotation marks omitted).  The Seventh Circuit, too, has emphasized that "[s]tandard-form agreements are a fact of life, and given § 2 of the [FAA], * * * arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals."  *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004); *see also Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004) (in rejecting challenge to arbitration provision, explaining that form contracts "reduce transaction[] costs and benefit consumers" by leading to "lower prices").  Because wireless phone service is not a necessity of life, there is nothing oppressive about requiring customers to adhere to a standard set of terms as a condition of obtaining service.

The agreement between Fiddler and ATTM suffers from none of the flaws identified in *Bess*.  Fiddler agreed to arbitrate when he first activated service from ATTM in November 2005—not, as in *Bess*, well after the fact.  Fiddler's initial November 2005 WSA with ATTM provided clear notice that his Terms of Service included an arbitration agreement.  *See* Berinhout Decl. Ex. 11.  The first page of those Terms of Service also notified him in boldfaced type that "**[t]his Agreement requires the use of arbitration to resolve disputes** * * *."  *Id.* Ex. 12 at 1.  The "**ARBITRATION**" section (which is clearly identified both in the Table of Contents and the text) declares in bold letters:  "**Please read this carefully.**  It affects your rights."  *Id.* Ex. 12 at 10.  The provision also notifies customers:  "YOU AND [ATTM] MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding."  *Id.* at 12.

The arbitration provision that was included in Fiddler's December 2006 bill similarly declares in bold letters on the front page:  "**Please read this carefully.  It affects your rights.**"  *Id.*

- 7 -

Ex. 1 at 1.  The front page also notifies Fiddler that "**[a]ny arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.**"  *Id.* (boldface in original).

Additionally, in contrast to *Bess*, when Fiddler activated service with ATTM, he had 30 days to cancel that service without having to pay an early-termination fee.  *Id.* Ex. 12 at 2.  And he had a choice:  At least one other carrier offers wireless service in Fiddler's area without requiring individual arbitration.  *See* Declaration of Joanne Savage ¶¶ 2–6.

Moreover, Fiddler's agreement lacks the flaw that caused the Illinois Supreme Court to find a modest degree of procedural unconscionability in the superseded provision at issue in *Kinkel*:  Far from hiding the costs of arbitration, ATTM's current provision makes clear that ATTM will pay ***all*** the costs of any non-frivolous arbitration.  *See* page 2 & n.3, *supra*.  Accordingly, Fiddler's arbitration agreement is not procedurally unconscionable.  Therefore, under Illinois's "sliding scale" approach (*Kinkel*, 857 N.E.2d at 263), that agreement must entail ***extreme*** substantive unconscionability to be unenforceable.  As we next explain, the ATTM arbitration provision is not substantively unconscionable at all, much less extremely so.

### B.     ATTM's Arbitration Provision Is Not Substantively Unconscionable.

To establish that ATTM's arbitration provision is substantively unconscionable under Illinois law, Fiddler must show that its terms are "inordinately one-sided in one party's favor." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006).  "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  *Kinkel*, 857 N.E.2d at 267 (quoting *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

An arbitration provision that prohibits class-wide adjudication is not automatically unconscionable under Illinois law.  As the *Kinkel* court explained, "[i]t is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation" because "consumers may benefit from reduced costs if companies are allowed to" use class-arbitration waivers.  857 N.E.2d at 278; *accord Boomer v. AT&T Corp.*, 309 F.3d 404, 419 n.7 (7th Cir. 2002) ("Arbitration offers cost-saving benefits * * * that in competition are passed along to customers.") (quotation marks omitted).  Accordingly, the *Kinkel* court held, "a class action waiver will ***not*** be found unconscionable * * * if the agreement containing the waiver is

not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the par-
ticular claim being asserted in a cost-effective manner." 857 N.E.2d at 274 (emphasis added);
*see also Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040, *6 (N.D. Ill. Dec. 7, 2007) (Pallmeyer,
J.) (unpublished) (enforcing arbitration clause with class waiver) (attached as Exhibit 3). Indeed,
"the Seventh Circuit has never held that class actions bars in arbitration agreements are uncon-
scionable." *Deaton v. Overstock.com, Inc.*, 2007 WL 4569874, *3 (S.D. Ill. Dec. 27, 2007) (un-
published) (enforcing arbitration provision containing class waiver) (attached as Exhibit 4).

The *Kinkel* court found two defects in ATTM's *2001* arbitration provision, neither of
which is present in ATTM's current arbitration provision. First, because the provision required
the customer to pay $125 in arbitration costs and—as interpreted by the court—did not provide
for prevailing-party attorneys' fees, the court held that the provision "create[d] a situation where
the cost of vindicating the [customer's $150] claim is so high that the plaintiff's only reasonable,
cost-effective means of obtaining a complete remedy" would be a class action. 857 N.E.2d at
275. Second, the court observed that the 2001 provision included a "strict confidentiality clause"
that "burden[s] an individual customer's ability to vindicate this claim." *Id.*

ATTM's current provision suffers from neither defect. First, the provision does not re-
quire customers to pay *any* of the costs of arbitration. *See* page 2, *supra*. Because it costs cus-
tomers nothing to arbitrate, this is not "a situation [in which] the cost of vindicating the claim is
so high" (*Kinkel*, 857 N.E.2d at 275) that they cannot pursue their claims on an individual basis.[9]
Second, the current provision contains no confidentiality requirement. *See* page 3, *supra*.

Although these two changes would have been enough to make the arbitration provision
enforceable under *Kinkel*, ATTM did not stop there. Instead, it created unprecedented incentives
for customers to pursue claims in individual arbitration. As discussed above, Illinois customers
like Fiddler would be entitled to a minimum award of *$10,000* and *double* attorneys' fees if the
arbitrator were to award them more than ATTM's last settlement offer. *See* pages 3-4, *supra*.
These amounts far exceed the level of damages that Congress and the Illinois Legislature have
deemed sufficient to encourage individuals and their counsel to pursue statutory claims. Na-
gareda Decl. ¶ 14 (citing $500 statutory damages provision in Telephone Consumer Protection

---

[9]    *See also Pivoris*, 2007 WL 4355040, at *5 (finding no substantive unconscionability where arbi-
tration clause provided same rights to fee-shifting that claimant would have enjoyed in court); *Deaton*,
2007 WL 4569874, at *3 (in light of defendant's agreement to pay plaintiff's arbitration costs, "the Court
cannot conclude that arbitration of this action is prohibitively expensive").

Act and $1,000 statutory damages provision in Cable Act); 15 U.S.C. § 1681n (statutory damages of between $100 and $1,000 available under Fair Credit Reporting Act); 210 ILCS 35/10(6) ($500 statutory damages under Community Living Facilities Licensing Act); 205 ILCS 690/35 ($1,000 statutory damages under Check Printer and Check Number Act).[10]

Moreover, even if Fiddler were awarded less than ATTM's last settlement offer and therefore were not entitled to the $10,000 premium and double attorneys' fees, he would remain entitled to recover attorneys' fees to the same extent as if he had sued in court. *See* page 3 & n.5, *supra*; *Pivoris*, 2007 WL 4355040, at *5.

In short, ATTM's arbitration provision poses no obstacle to "obtain[ing] a remedy for the particular claim being asserted in a cost-effective manner." *Kinkel*, 857 N.E.2d at 274. As Professor Nagareda explains, although arbitration provisions containing class-arbitration prohibitions may be substantively unconscionable when their enforcement would result in "the effective elimination of consumers' private rights of action" (Nagareda Decl. ¶ 7), *ATTM's* provision is not of that type. To the contrary, that provision "reduces dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate the development of a market for fair settlement of such claims, and provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to settle their disputes." *Id.* ¶ 11. Indeed, this provision *enhances*, rather than impedes, a consumer's private right of action.

## II.   ANY ARGUMENT THAT *KINKEL* REQUIRES INVALIDATION OF ATTM'S ARBITRATION PROVISION WOULD RUN AFOUL OF THE FAA.

As just discussed, *Kinkel* suggests that the Illinois Supreme Court would uphold ATTM's arbitration provision. But if Fiddler argues that *Kinkel* effectively creats an across-the-board rule under which even ATTM's unprecedentedly pro-consumer arbitration provision cannot pass muster, so construed *Kinkel* would be preempted by the FAA—both expressly and under the doctrine of conflict preemption.

### A.   Express Preemption.

Under Section 2 of the FAA:

---

[10]    Furthermore, ATTM's arbitration provision affords Fiddler the opportunity to fully vindicate his substantive rights under the Illinois Consumer Fraud and Deceptive Practices Act, ILCS 505/1 *et seq.*, and Computer Crime Prevention Act, 720 ILCS 5/16D-1 *et seq.*, as the provision places no limits on the arbitrator's authority to award any and all relief available under those statutes.

> An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law* "save upon such grounds as exist at law or in equity for the revocation of *any* contract." Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement[.]

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (citations omitted; emphases in original); *see also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). Invalidating ATTM's uniquely pro-consumer provision would run afoul of Section 2 in several ways.

    ***First***, Section 2 of the FAA preempts even "general principle[s] of contract law, such as unconscionability" if "those general doctrines" are "employ[ed] * * * in ways that ***subject arbitration clauses to special scrutiny***." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004) (emphasis added); *see also Perry*, 482 U.S. at 429 n.9 (state courts cannot "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable"). Here, the application of "special scrutiny" is precisely what would be necessary in order to invalidate ATTM's arbitration provision. As noted above, a contractual term is substantively unconscionable under generally applicable Illinois law only if it is "oppress[ively]" "one-sided" and involves "an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267 (quoting *Maxwell*, 907 P.2d at 58)). The only way that ATTM's arbitration provision could be held unconscionable under Illinois law would be to ignore this standard and to subject the provision to forbidden "special scrutiny." There is nothing oppressively one-sided about a consumer agreeing to arbitrate in lieu of participating in class litigation; nor is an "overall imbalance" effected by such an agreement. ATTM's arbitration procedures are designed to make obtaining relief simple and quick. *See* pages 2–4, *supra*. Moreover, the prospective economic reward for arbitrating under ATTM's provision is substantial: Under ATTM's arbitration provision, Illinois customers with small claims may be entitled to a minimum payment of $10,000. *See* pages 2-3, *supra*. By contrast, members of class actions rarely receive more than pennies on the dollar for their claims and never would receive more than the amount of their claims. And because the vast majority of disputes would not be susceptible to class treatment in any event, waiving the right to bring class actions in exchange for these benefits and a streamlined method of dispute resolution involves essentially no sacrifice at all.

Thus, any argument that this exceptionally pro-consumer arbitration provision is unconscionable would necessarily rest upon a distorted notion of what it means for contract terms to be "oppress[ively]" "one-sided"—one that would enable courts to justify striking down virtually any contractual provision that they think has ended up being unfair to one of the contracting parties. That is manifestly not Illinois law—at least not with respect to any contractual provisions other than ones agreeing to resolve disputes by arbitration on an individual basis. Therefore, Section 2 would preempt any state-law rule under which ATTM's arbitration provision is considered to be substantively unconscionable.

*Second*, an arbitration agreement cannot be invalidated based on newly manufactured principles of state law. Because Section 2 requires enforcement of arbitration agreements "save upon such grounds *as exist* at law or in equity for the revocation of any contract" (emphasis added), state law is applicable only if it "*arose* to govern issues concerning the validity, revocability, and enforceability of contracts generally" (*Perry*, 482 U.S. at 493 n.9) (emphasis added). As the Seventh Circuit has put it, "no state can apply to arbitration (when governed by the [FAA]) any novel rule." *Oblix*, 374 F.3d at 492. Because Illinois has no generally applicable *per se* rule against class waivers, Section 2 precludes the adoption of such a rule in the context of an attack on an arbitration agreement.

*Third*, from the well-established principle that courts may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable" (*Perry*, 482 U.S. at 493 n.9), it follows logically that "state law challenges to arbitration agreements cannot be based on unique characteristics of the arbitration process, such as the lack of class relief." Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729, 776 (2006).[11]

Indeed, the Third Circuit recently held that the FAA expressly preempts Pennsylvania state-court decisions invalidating class waivers in arbitration agreements. *See Gay v. CreditInform*, 511 F.3d 369, 2007 WL 4410362, at *19-*21 (3d Cir. Dec. 19, 2007). As the Third Circuit explained, "it is perfectly obvious that [a plaintiff] relies on the uniqueness of the arbitration pro-

---

[11]     *Cf. Iberia*, 379 F.3d at 174 ("that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's * * * 'simplicity, informality, and expedition,' characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims") (internal citation omitted) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)); *id.* at 175–76 (to demand "all of the procedural accoutrements that accompany a judicial proceeding" would undermine "the point of arbitration"); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (class waiver is "consistent with the goals of 'simplicity, informality, and expedition' touted * * * in *Gilmer*").

vision" when he contends "that the provision is unconscionable because of what it provides, i.e., arbitration of disputes on an individual basis in place of litigation possibly brought on a class action basis." *Id.* at \*21. Indeed, "[i]t would be sophistry" to characterize such an argument as applicable to contracts in general rather than (impermissibly) targeting arbitration agreements in particular. *Id.* at \*20. Such arguments "are not in harmony with *Perry*." *Id.* Because the vast majority of waivers of class-wide dispute resolution are contained in arbitration provisions, a state-law rule that invalidates such waivers—like a rule that would refuse to enforce waivers of the right to a jury trial—is a proxy for a rule that broadly invalidates arbitration provisions. *See id.* Thus, Section 2 of the FAA expressly preempts such a state-law rule.

### B.    Conflict Preemption.

Any state-law rule that would preclude ATTM from requiring individual arbitration notwithstanding the unprecedented incentives to invoke the arbitration process that ATTM has provided would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" in enacting the FAA and would therefore be preempted under the doctrine of conflict preemption. *United States v. Locke*, 529 U.S. 89, 109 (2000) (internal quotation marks and citation omitted). When federal law encourages private parties to engage in or refrain from a certain activity, as the FAA does (*see, e.g., Moses H. Cone*, 460 U.S. at 24), state laws producing contrary incentives must yield.[12]

That is the case here. Put simply, when a business decides whether to include an arbitration provision in its customer agreements, it must consider the advantages and disadvantages of doing so. The advantages of arbitration are that it "saves time, saves trouble, saves money." *Joint Hearings on S. 1005 and H.R. 646 Before the Subcomms. of the Comms. on the Judiciary*, 68th Cong., 1st Sess. 7 (1924) (statement of Charles Bernheimer, N.Y. Chamber of Commerce). The risk is that the arbitrator will render an erroneous decision that is essentially unreviewable.

---

[12]    *See, e.g., Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) (state-law protection of unpatentable inventions was preempted because it "could essentially redirect inventive efforts away from the careful criteria of patentability developed by Congress over the last 200 years"); *Edgar v. MITE Corp.*, 457 U.S. 624, 635 (1982) (holding that federal securities laws preempt state tender offer regulation, which gave "incumbent management \* \* \* a powerful tool to combat tender offers," because "*[t]hese consequences are precisely what Congress determined should be avoided*") (emphasis added); *see also New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995) (ERISA, which has the purpose of promoting regulated plans' flexibility in providing coverage, would preempt a state law that "produce[s] such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage").

*See*, *e.g.*, *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (standard for vacating an arbitral award is "among the narrowest known to law") (internal quotation marks omitted).  Many businesses are willing to take that risk because of the cost savings and the desire for a less adversarial method of resolving disputes with customers.  And businesses with customer care departments charged with the mission of resolving disputes fairly and quickly—like ATTM (*see* pages 3-4, supra)—are even more likely to be willing to make this trade off.

The calculus changes dramatically, however, if the arbitration provision must allow for class-wide arbitration.  Engrafting time-consuming and expensive class-action procedures onto an arbitral proceeding would present businesses with a "worst-of-all-worlds" scenario.  To begin with, class-action procedures are inherently irreconcilable with the benefits that arbitration was designed to achieve—speed, simplicity, cost savings, informality, and reduced adversariality (*Mitsubishi*, 473 U.S. at 628).[13]

Moreover, while the stakes of a class arbitration are exponentially higher than those of an individual arbitration, any class-wide arbitral award would remain reviewable only for fraud, bias, or "manifest disregard" of the law.  *See* 9 U.S.C. § 10; *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268–69 (7th Cir. 2006).  No business could afford to expose itself to the risk that an arbitrator subject to only very limited judicial review would render a massive class award.  In short, the inevitable consequence of conditioning the enforcement of consumer arbitration provisions on the availability of class-wide arbitration is that businesses will stop including arbitration provisions in their contracts with consumers.  Nothing could more clearly "frustrate the purpose" (*Livadas v. Bradshaw*, 512 U.S. 107, 116 (1994)) of the FAA.  As the Third Circuit recently noted, to apply state-court decisions that condemn class waivers would "interfere with the appropriate application of the FAA" because "their reasoning if applied logically could result in a significant narrowing of the application of the FAA."  *Gay*, 2007 WL 4410362, at *21.  Such a consequence would "implicate[]" the "Commerce and Supremacy Clauses of the United States Con-

---

[13]    Superimposing class-action procedures on arbitration "brings the burdens of litigation into the arbitral forum.  * * *  [T]he greatest advantages of arbitration are in many instances the greatest disadvantages of litigation, yet class-wide arbitration * * * lessens the distinction between the two processes."  Jonathan R. Bunch, Note, *To Be Announced: Silence from the United States Supreme Court and Disagreement Among Lower Courts Suggest an Uncertain Future for Class-Wide Arbitration*, 2004 J. DISP. RESOL. 259, 272.

stitution." *Id.*[14]

Thus, if *Kinkel* truly did establish a state-law rule under which even ATTM's arbitration provision would be unenforceable, that rule of law would be preempted by the FAA. *See id.*[15]

## CONCLUSION

The Court should compel arbitration and dismiss all claims against ATTM.[16]

Dated: February 7, 2008                           Respectfully submitted,

                                                  /s Victoria R. Collado

---

[14]     We recognize that the Ninth Circuit has rejected a similar conflict-preemption argument. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 988-93 (9th Cir. 2007). It did so in the mistaken belief that the defendant in that case, a predecessor to ATTM, was required to show affirmatively that businesses would indeed abandon arbitration, in order for conflict preemption to apply. *Id.* at 993. To the contrary, courts—out of necessity—engage in a predictive exercise when determining whether a state law will operate to frustrate the purposes and goals of Congress. *See, e.g., Bonito Boats*, 489 U.S. at 161 (finding conflict preemption where state law "**could** pose a substantial threat to the patent system's ability to accomplish its mission of promoting progress in the useful arts," and refusing to dismiss the conflict as a "hypothetical * * * possibility") (emphasis added). There is no requirement that they wait for disaster to strike before finding preemption.

         To the extent that Fiddler may attempt to rely on *Kinkel* for the proposition that the FAA does not preempt Illinois unconscionability law, such reliance would be misplaced. First, "[a] federal district court is, of course, not bound by a state court's rulings on matters of federal law." *Calvin v. Sheriff of Will County*, 405 F. Supp. 2d 933, 940 (N.D. Ill. 2005); *see also, e.g., RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Second, *Kinkel* is incorrect on this point. That court improperly construed Section 2 as forbidding only expressly arbitration-specific unconscionability rules (857 N.E.2d at 261–62), thus failing to recognize that it also preempts attempts to accomplish the same end indirectly. *See* pages 11-13, *supra*; *Gay*, 2007 WL 4410362 at *20-21. And the *Kinkel* court rejected ATTM's conflict-preemption argument on the mistaken ground that ATTM was required to show that Congress intended to favor individual arbitration over class arbitration. *Id.* at 262. The *Kinkel* court also misread the Supreme Court's holding in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), as an endorsement of class arbitration. *See* 857 N.E.2d at 262. To the contrary, *Bazzle* held merely that arbitrators rather than courts should determine in the first instance whether an ambiguous arbitration provision permits class arbitration.

[15]     *See also Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 365 (Tenn. Ct. App. 2001) (regardless of any state-law concern about "the unavailability of class action relief," "the Supremacy Clause of the Federal Constitution * * * preclude[s] [a court] from invalidating an arbitration agreement otherwise enforceable under the FAA simply because a plaintiff cannot maintain a class action"); *Schultz v. AT&T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D. W. Va. 2005); *Blitz v. AT&T Wireless Servs., Inc.*, No. 054-00281, slip. op. at 6 (Mo. Cir. Ct. Nov. 28, 2005) (attached as Exhibit 5).

[16]     *See Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695, 711 (E.D. Wis. 2005) ("A court may dismiss a case if all of the issues raised before it are arbitrable."); *accord, e.g., Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal * * * when all of the issues * * * must be submitted to arbitration.") (emphasis omitted).

Victoria R. Collado
Sarah E. Reynolds
Keonna Carter
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711

Seamus C. Duffy                          Evan M. Tager
   (Of Counsel)                             (*pro hac vice* application pending)
Maresa Torregrossa                       Archis A. Parasharami
   (Of Counsel)                             (Of Counsel)
DRINKER BIDDLE & REATH LLP               MAYER BROWN LLP
1 Logan Square, 18th and Cherry Streets  1909 K Street, N.W.
Philadelphia, PA 19103-6996              Washington, D.C. 20006-1101
Tel:  (215) 988-2700                     Tel: (202) 263-3000
Fax: (215) 988-2757                      Fax: (202) 263-3300

*Counsel for Defendant AT&T Mobility LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah E. Reynolds, an attorney, hereby certify that a true and correct copy of **MEMO-RANDUM OF LAW IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S MO-TION TO COMPEL ARBITRATION AND DISMISS** was served on the following counsel of record via electronic delivery on February 7, 2008:

Jay Edelson
Myles McGuire
John Blim (Of Counsel)
KAMBEREDELSON, LLC
53 West Jackson Blvd.
Suite 1530
Chicago, IL  60604
(312) 589-6370

Bart Murphy
Ice Miller LLP
2300 Cabot Drive
Lisle, IL  60532
(630) 955-6392

Respectfully submitted,

/s/Sarah E. Reynolds

Dated: February 7, 2008                *Attorney for Defendant AT&T Mobility LLC*