# EXHIBIT 1

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrown.com

Victoria R. Collado
Direct Tel (312) 701-7228
Direct Fax (312) 706-8613
vcollado@mayerbrown.com

January 30, 2008

**VIA E-MAIL AND U.S. MAIL**

Jay Edelson
Myles McGuire
KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, IL 60604

Re:     *Fiddler v. AT&T Mobility, LLC,*
        No. 1:08-cv-00416 (N.D. Ill.)

Dear Mr. Edelson and Mr. McGuire:

On behalf of defendant AT&T Mobility LLC ("ATTM"), I write to advise you that your client, Morris Fiddler, has agreed to pursue his disputes with ATTM in individual arbitration or small claims court. Accordingly, ATTM requests that your client honor his agreement.

In November 2005, Mr. Fiddler activated wireless service with ATTM (then Cingular Wireless) by entering a Wireless Service Agreement ("WSA") that was accompanied by, and incorporated by reference, a set of terms and conditions. A printout of Mr. Fiddler's WSA and a copy of the Terms of Service Booklet that he would have received are attached at Tab 1. The Terms of Service contain an arbitration provision (at page 10).

In December 2006, pursuant to the change-in-terms provision in the Terms of Service, ATTM revised its arbitration agreements with all of its customers. ATTM sent all customers whom it bills on a monthly basis, including your client, a copy of the revised arbitration provision in the envelope containing their December 2006 bills. A copy of the revised arbitration provision, as posted on ATTM's website (http://www.att.com/disputeresolution), is attached at Tab 2.

Because Mr. Fiddler has contractually agreed not to pursue claims in courts of general jurisdiction, ATTM requests that he dismiss his claims against ATTM and pursue those claims in arbitration or small claims court. If he does not do so by February 5, 2008, ATTM will have no choice but to file a motion to compel arbitration.

Sincerely,

*Victoria Collado*

Victoria R. Collado

VRC:ls
Enclosures

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia).

**TAB 1**



# WIRELESS SERVICE AGREEMENT

1-800-331-0500

| Market/Region:<br>STL | Activation Date:<br>11/25/2005 |
| Agent Code:<br>SR096 | Sales Person:<br>CHARLES STADTLANDER |

## CUSTOMER BILLING INFORMATION

Billing Name/Legal Name (First, MI, Last):
MORRIS FIDDLER

Attention Line:

Street Address: ███████

| City:<br>CHICAGO | State:<br>IL | Zip Code: ████ |
| Home Number:<br>███████ | Work Number:<br>███████ | |
| Drivers License Number:<br>███████ | State Name:<br>IL | |

## SERVICE COMMITMENT

| [ ] 1-Year: | [X] 2-Year: | [ ] Other: |

## CREDIT AND BILLING ACCOUNT INFORMATION

| Credit Check Number:<br>███████ | Advance Payment/<br>Deposit Amount:<br>$ 0.00 |
| Account Number:<br>███████ | Billing Period:<br>28 |

## SERVICE ACTIVATION CHARGE

| Activation Chrg<br>(One Time Chrg)<br>$ 36.00 | One Payment | Installment Bill<br>(If Applicable)<br>$        /month |

## MONTHLY PLAN*

| Rate Plan:<br>NATP450RUMM5KNW | Monthly Service Fee:<br>$ 39.99 |

*For informational purposes only in case of conflicts rate plan brochures control.

## FEATURES AND RATE PLAN OPTIONS

| Check | Feature Name | Cost/Mo |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Summary of Monthly(Excluding airtime charges and taxes.) | $ 39.99 |

| SALES TYPE | WIRELESS NUMBER | PRODUCT DESCRIPTION |
|---|---|---|
| New | ███████ | unknown GSM |

| ESN | SIM | IMEI |
|---|---|---|
| | ███████ | ███████ |



# WIRELESS SERVICE AGREEMENT

1-800-331-0500

## CREDIT CHECK CONSENT AND REPORTING AUTHORIZATION

I authorize any person, or consumer or credit reporting agency, to provide Cingular with any information it has on me or the entity on whose behalf I make this application. I authorize Cingular to: (a) compile this information, (b) disclose my account information, including my payment history and confidential information, to credit reporting agencies or private credit reporting associations, and (c) periodically obtain and use my credit report and other credit information from any source in connection with Cingular's offering of wireless and other services. I understand that if I fail to fulfill the terms of my credit obligations under this Agreement, Cingular may report my failure to a credit reporting agency.

## DOOR-TO-DOOR SALE

IF THIS IS A DOOR-TO-DOOR SALE, I MAY HAVE A LEGAL RIGHT TO CANCEL THIS TRANSACTION BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THE TRANSACTION. IF APPLICABLE, I WILL REVIEW THE ASSOCIATED NOTICE OF CANCELLATION FORM AND EXPLANATION OF THIS RIGHT.

## REGULATORY COST RECOVERY FEE

Cingular also imposes the following charges: a Regulatory Cost Recovery Fee of up to $1.25 to help defray its costs incurred in complying with obligations and charges imposed by State and Federal telecom regulations, a gross receipts surcharge, and State and Federal Universal Service Charges. The Regulatory Cost Recovery Fee is not a tax or a government required charge.

## GUARANTY

If I am signing on behalf of an entity, I represent that I am authorized to sign on its behalf, and I agree to be jointly responsible with the entity for payment of any sums that become due under, and to be bound by, this Agreement. I agree you can collect directly from me without first proceeding against the entity.

## CONTRACT PROVISIONS

This Agreement incorporates and includes by reference Cingular's current service Terms and Conditions Booklet # including its binding arbitration clause. This Agreement also incorporates and includes by reference the versions of the following Cingular brochures that are effective as of the date of this Agreement: i. Cingular's Rate Plan Brochure describing the services listed above under "Monthly Plan;" and, ii. Cingular's Features Brochure(s) describing the service feature(s) listed above under "Optional Features." I acknowledge that the Terms and Conditions Booklet, the Rate Plan Brochure and the Features Brochure(s) were separately provide to me at the time I signed this Agreement. For California customers, these documents are also posted at www.cingular.com/californiainfo.

## SERVICE/COVERAGE LIMITATIONS

Service is not available at all times in all places. Coverage maps are available at www.cingular.com and are subject to the additional limitations described there. There are gaps in coverage within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. I accept Cingular's service with these limitations.

## EARLY TERMINATION FEE

In FL, GA, SC, NC, KY, TN, MS, LA, AL, NY, and parts of IN and NJ, if I terminate this Agreement before expiration of my Service Commitment, I will pay Cingular an Early Termination Fee of $240 for each wireless telephone number associated with the service prorated over the term of my Service Commitment. In all other areas, if I terminate this Agreement before expiration of my Service Commitment, I will pay Cingular an Early Termination Fee of $150 for each wireless telephone number associated with the service.

## 30 DAY CANCELLATION POLICY

I may terminate this Agreement within thirty (30) days after activating service without paying an Early Termination Fee. I will pay for service fees and charges incurred through the termination date, but Cingular will refund my activation fee, if any, if I terminate within three (3) days of activating the service. Also, I may have to return any handsets and accessories purchased with this Agreement. If I terminate after the 30th day but before expiration of the Agreement's Service Commitment, I will pay Cingular an Early Termination Fee for each wireless telephone number associated with the service.

**I HAVE READ, UNDERSTAND, AND AGREE TO BE BOUND BY THIS AGREEMENT WITH ITS SEPARATE TERMS AND CONDITIONS BOOKLET, RATE PLAN BROCHURE AND FEATURES BROCHURE(S) (including but not limited to, their Changes to Terms and Rates, Limitation of Liability and Arbitration provisions).**

| CUSTOMER SIGNATURE/AUTHORIZATION | Accepted Terms via Interactive Voice Response |
|---|---|

Cingular Scanning Project * c/o Layton Graphics
155 Woolco Dr.
Marietta GA 30062

PAGE 2 of 2



CINGULAR WIRELESS TERMS OF SERVICE

Terms of Service

✕ cingular
raising the bar ▪▪▫▪l™

# TABLE OF CONTENTS

| | |
|---|---|
| Terms of Service | 1 |
| Service Commitment; Early Termination Fee | 1-2 |
| 30 Day Cancellation Period/Termination | 2 |
| Charges and Disputes | 3 |
| Billing and Payment | 3-5 |
| Dishonored Checks and Other Instruments | 5 |
| Changes to Terms and Rates | 6 |
| Contingent Benefits | 6-7 |
| Equipment | 7 |
| Advance Payments and/or Deposits | 7-8 |
| Late Payment Charges | 8 |
| Service Limitations; Limitation of Liability | 8-10 |
| Account Access | 10 |
| Voicemail Service | 10 |
| Arbitration | 10-12 |
| Credit Reporting Authorization | 12 |
| Miscellaneous | 12-13 |

# TERMS OF SERVICE

"Cingular" or "we" "us" or "our" refers to Cingular Wireless LLC, acting on behalf of its FCC-licensed affiliates doing business as Cingular Wireless. "You" or "your" refers to the person or entity that is the customer of record. PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. **This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute.**

## SERVICE COMMITMENT; EARLY TERMINATION FEE

Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with the cancellation policy; or (b) pursuant to a change of terms, conditions, or rates as set forth below, you agree to pay us with respect to each Equipment identifier or telephone number assigned to you, in addition to all other amounts owed, an Early Termination Fee. In Florida, Georgia, South Carolina, North Carolina, Kentucky, Tennessee, Mississippi, Louisiana, Alabama, New York, applicable parts of Indiana, and applicable parts of New Jersey the Early Termination Fee is $240 divided by the total number of months in your Service Commitment, then multiplied by the remaining months or parts of months in such Service Commitment; in all other areas it is $150. ("Early Termination Fee"). The Early Termination Fee is not a penalty, but rather a charge to compensate us for your failure to satisfy the Service Commitment

1

on which your rate plan is based. AFTER YOUR SERVICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL EITHER PARTY GIVES NOTICE PURSUANT TO THE TERMINATION PROVISION BELOW.

**30 DAY CANCELLATION PERIOD/TERMINATION**

You may terminate this Agreement within thirty (30) days after activating service without paying an Early Termination Fee. You will pay for service fees and charges incurred through the termination date, but Cingular will refund your activation fee, if any, if you terminate within three (3) days of activating the service. Also, you may have to return any handsets and accessories purchased with this Agreement. If you terminate after the 30th day but before expiration of the Agreement's Service Commitment, you will pay Cingular an Early Termination Fee for each wireless telephone number associated with the service. Either party may terminate this Agreement at any time after your Service Commitment ends with thirty (30) days notice to the other party. We may terminate this Agreement at any time without notice if we cease to provide service in your area. We may interrupt or terminate your service without notice for any conduct that we believe violates this Agreement or any terms and conditions of your rate plan, or if you behave in an abusive, derogatory or similarly unreasonable manner with any of our representatives, or if we discover that you are under age, or if you fail to make all required payments when due, or if we have reasonable cause to believe that your Equipment is being used for an unlawful purpose or in a way that may adversely affect our service, or if you provided inaccurate credit information or we believe your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

2

## CHARGES AND DISPUTES

You are responsible for paying all charges for or resulting from services provided under this Agreement. You will receive monthly bills that are due in full as shown thereon. YOU MUST, WITHIN 100 DAYS OF THE DATE OF THE BILL, NOTIFY US IN WRITING AT CINGULAR WIRELESS, BILL DISPUTE, SUITE 1400, 5565 GLENRIDGE CONNECTOR, P.O. BOX 16, ATLANTA, GA 30342 ("CINGULAR'S ADDRESS") OF ANY DISPUTE YOU HAVE WITH RESPECT TO THE BILL, INCLUDING ANY CHARGES ON THE BILL AND ANY SERVICE WE PROVIDED FOR WHICH YOU WERE BILLED, OR YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICES AND TO BRING, OR PARTICIPATE IN, ANY LEGAL ACTION RAISING ANY SUCH DISPUTE. Charges include, without limitation, airtime, roamer, recurring monthly service, activation, adminis-trative, and late payment charges; regulatory cost recovery and other surcharges; optional feature charges; toll, collect call and directory assistance charges; restoral and reactivation charges, any other charges or calls billed to your phone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon Cingular. To determine your primary place of use ("PPU") and which jurisdiction's taxes and assessments to collect, you are required to provide us with your residential or business street address. If you do not provide us with such address, or if it falls outside our licensed service area, we may reasonably designate a PPU within the licensed service area for you.

## BILLING AND PAYMENT

Except as provided below, monthly service and certain other charges are billed one month in advance, and there is no proration of such charges if service is terminated on other than the last day of your billing cycle. Monthly service and certain other charges are billed in arrears if you are a former customer of AT&T Wireless and maintain uninter-rupted service on select Cingular rate plans, provided, however, that in either case, if

3

you elect to receive your bills for your Cingular services combined with your landline phone bill (where available) you will be billed in advance as provided above. You agree to pay for incoming and outgoing calls, and data services sent to and from your Equipment. AIRTIME AND OTHER MEASURED USAGE ("CHARGEABLE TIME") ARE BILLED IN FULL-MINUTE INCREMENTS, AND ACTUAL AIRTIME AND USAGE ARE ROUNDED UP TO THE NEXT FULL MINUTE INCREMENT AT THE END OF EACH CALL FOR BILLING PURPOSES. CINGULAR CHARGES A FULL MINUTE OF AIRTIME USAGE FOR EVERY FRACTION OF THE LAST MINUTE OF AIRTIME USED ON EACH WIRE-LESS CALL. DATA TRANSPORT IS BILLED IN FULL-KILOBYTE INCREMENTS, AND ACTUAL TRANSPORT IS ROUNDED UP TO THE NEXT FULL-KILOBYTE INCREMENT AT THE END OF EACH DATA SESSION FOR BILLING PURPOSES. CINGULAR CHARGES A FULL KILOBYTE OF DATA TRANSPORT FOR EVERY FRACTION OF THE LAST KILOBYTE OF DATA TRANSPORT USED ON EACH DATA SESSION. NETWORK OVERHEAD, SOFTWARE UPDATE REQUESTS, AND RE-SEND REQUESTS CAUSED BY NETWORK ERRORS CAN INCREASE MEASURED KILOBYTES. If you select a rate plan that includes a predetermined allotment of Services (for example, a predetermined amount of airtime, megabytes or text messages), unless otherwise specifically provided as a part of such rate plan, any unused allotment of services from one billing cycle will not carry over to any other billing cycle. We may bill you in a format as we determine from time to time. Additional charges may apply for additional copies of your bill, or for detailed information about your usage of Services. Charges for usage of services on networks maintained by other carriers or on networks acquired by Cingular after August 31, 2004 may appear on your bill after the billing cycle in which the usage occurred. Chargeable Time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with our facilities. Chargeable Time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by our facilities and the

4

call disconnect signal has been confirmed. All outgoing calls for which we receive answer supervision or which have at least 30 seconds of Chargeable Time, including ring time, shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable Time may include time for us to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time. Chargeable Time may also occur from other uses of our facilities, including by way of example, voice mail deposits and retrievals, and call transfers. Calls that begin in one rate period and end in another rate period may be billed in their entirety at the rates for the period in which the call began. If your wireless phone or other device ("Equipment") is lost or stolen, **you will be responsible for all charges incurred on your phone number until you report the theft or loss and provide a police report number to us.** After you report the theft or loss to us, you remain responsible for complying with your other obligations under this Agreement, including, but not limited to, payment of your monthly service fee. You also remain responsible for paying your monthly service fee if your service is suspended for nonpayment. We may require payment by money order, cashier's check or a similarly secure form of payment at our discretion.

**DISHONORED CHECKS AND OTHER INSTRUMENTS**
We will charge you $30.00 or the highest amount allowed by law, whichever is less, for any check or other instrument (including credit card chargebacks) tendered by you and returned unpaid by a financial institution for any reason. You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts.

5

## CHANGES TO TERMS AND RATES

We may change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time. We will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roamer rates or administrative charges) either in your monthly bill or separately. You understand and agree that State and Federal Universal Service fees and other governmentally imposed fees, whether or not assessed directly upon you, may be increased based upon the government's or our calculations. IF WE INCREASE THE PRICE OF ANY OF THE SERVICES TO WHICH YOU SUBSCRIBE, BEYOND THE LIMITS SET FORTH IN YOUR RATE PLAN BROCHURE, OR IF WE MATERIALLY DECREASE THE GEOGRAPHICAL AREA IN WHICH YOUR AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OR MAINTENANCE), WE WILL DISCLOSE THE CHANGE AT LEAST ONE BILLING CYCLE IN ADVANCE (EITHER THROUGH A NOTICE WITH YOUR BILL, A TEXT MESSAGE TO YOUR EQUIPMENT, OR OTHERWISE) AND YOU MAY TERMINATE THIS AGREEMENT WITHOUT PAYING AN EARLY TERMINATION FEE OR RETURNING OR PAYING FOR ANY PROMOTIONAL ITEMS, PROVIDED YOUR NOTICE OF TERMINATION IS DELIVERED TO US WITHIN THIRTY (30) DAYS AFTER THE FIRST BILL REFLECTING THE CHANGE. If you lose your eligibility for a particular rate plan, we may change your rate plan to one for which you qualify.

## CONTINGENT BENEFITS

You may receive or be eligible for certain rate plans, discounts, features, promotions, and other benefits ("Benefits") through a business or government customer's agreement with us ("Business Agreement"). Any and all such Benefits are provided to you solely as a result of the corresponding Business Agreement and such Benefits may be modified or terminated without notice. If a business or government entity pays your charges or is otherwise liable for the charges, you authorize us to share your account information with

6

that entity and / or its authorized agents. If you are on a rate plan and/or receive certain Benefits tied to a Business Agreement with us, but you are liable for your own charges, then you authorize us to share enough account information with that entity and/or its authorized agents to verify your continuing eligibility for those Benefits and/or rate plan. You may receive Benefits because of your agreement to have the charges for your Service billed ("Joint Billing") by a landline company affiliated with Cingular ("Affiliate") or because you subscribe to certain service provided by an Affiliate. If you cancel Joint Billing or the Affiliate service your rates will be adjusted without notice to a rate plan for which you qualify.

**EQUIPMENT**

Your Equipment must be compatible with, and not interfere with, our service, and must comply with all applicable laws, rules and regulations. We may periodically program your Equipment remotely with system settings for roaming service and other features that cannot be changed manually. Equipment purchased for use on our network may not function on other networks.

**ADVANCE PAYMENTS AND/OR DEPOSITS**

We may require you to make deposits or advance payments for services, which we may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. We may require additional advance payments or deposits if we determine that the initial payment was inadequate. Based on your creditworthiness as we determine it, we may establish a credit limit and restrict service or features. If your account balance goes beyond the limit we set for you, we may immediately interrupt or suspend service until your balance is brought below the limit. Any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts in good standing to

7

maintain service. If one account is past due or over its limit, all accounts in your name are subject to interruption or termination and all other available collection remedies.

**LATE PAYMENT CHARGES**

Late payment charges are based on the state to which the area code of the wireless telephone number assigned to you is assigned by the North American Numbering Plan Administration (for area code assignments see http://www.nationalnanpa.com/area_code_maps). You agree that for amounts not paid by the due date, CINGULAR may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5.00 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, PA, OK, OH, RI, VA, VT, WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

**SERVICE LIMITATIONS; LIMITATION OF LIABILITY**

Service may be interrupted, delayed or otherwise limited for a variety of reasons, including environmental conditions, unavailability of radio frequency channels, system capacity, priority access by National Security and Emergency Preparedness personnel in the event of a disaster or emergency, coordination with other systems, equipment modifications and repairs, and problems with the facilities of interconnecting carriers. We may block access to certain categories of numbers (e.g. 976, 900 and international destinations) or certain websites in our sole discretion. We may, but do not have the obligation to, refuse to transmit any information through the Service and may screen and delete information prior to delivery of that information to you. **There are gaps in service within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. WE DO NOT GUARANTEE YOU UNINTERRUPTED SERVICE OR COVERAGE. WE CANNOT ASSURE YOU THAT IF YOU PLACE A 911 CALL YOU WILL BE FOUND.** Airtime and other service charges

8

apply to all calls, including involuntarily terminated calls. CINGULAR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTIC- ULAR PURPOSE, SUITABILITY, OR PERFORMANCE REGARDING ANY SERVICES OR GOODS, AND IN NO EVENT SHALL CINGULAR BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any: (a) act or omission of a third party; (b) mistakes, omis- sions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through us; (c) damage or injury caused by the use of service or Equipment, including use in a vehicle; (d) claim against you by third parties; (e) damage or injury caused by a suspension or termination of service by Cingular; or (f) damage or injury caused by failure or delay in connecting a call to 911 or any other emergency service. Notwithstanding the foregoing, if your service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, a credit equal to a pro-rata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. Our liability to you for service fail- ures is limited solely to the credit set forth above. Unless applicable law precludes parties from clauses, Cingular shall not be liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, service or Equipment provided by or through Cingular, including loss of business or goodwill, revenue or profits, or claims of personal injuries. To the full extent allowed by law, you hereby release, indemnify, and hold Cingular and its officers, directors, employ- ees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by Cingular or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART FROM THE ALLEGED NEGLIGENCE OF CINGULAR, or any violation by you of this Agreement. This obligation shall survive termination of your service with Cingular. Cingular is not liable to you for changes in operation, equipment or technology that

cause your Equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**ACCOUNT ACCESS**

You authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you.

**VOICEMAIL SERVICE**

We may deactivate your voicemail service if you do not initialize it within a reasonable period after activation. We will reactivate the service upon your request.

**ARBITRATION**

**Please read this carefully.** It affects your rights. Cingular and you (such references include our respective subsidiaries, affiliates, predecessors in interest, successors and assigns) agree to arbitrate all disputes and claims (including ones that already are the subject of litigation) arising out of or relating to this Agreement, or to any prior oral or written agreement, for Equipment or services between Cingular and you. Notwithstanding the foregoing, either party may bring an individual action in small claims court. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Intent to Arbitrate ("Notice"). The Notice to Cingular should be addressed to:

10

General Counsel, Cingular Wireless, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Arbitration Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If we do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Cingular may commence an arbitration proceeding. After Cingular receives notice at the Arbitration Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. All issues are for the arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Agreement. The arbitration shall be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and shall be administered by the AAA. The AAA Rules are available at www.adr.org or by writing to the Arbitration Notice Address. Except as otherwise provided for herein, Cingular will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then the payment of all such fees shall be governed by the AAA Rules. In such case, you agree to reimburse Cingular for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules. If the arbitrator grants relief to you that is equal to or greater than the value of your Demand, Cingular shall reimburse you for your reasonable attorneys' fees and expenses incurred for the arbitration. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees and expenses at any time during the proceeding and upon request from either party within 14 days of the arbitrator's ruling on the merits. **You agree that, by entering into this Agreement, you and Cingular are waiving the right to a trial by jury.** Unless

11

Cingular and you agree otherwise, all hearings conducted as part of the arbitration shall take place in the county (or parish) of your billing address. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void. Notwithstanding any provision in this Agreement to the contrary, we agree that if Cingular makes any change to this arbitration provision (other than a change to the Arbitration Notice Address) during your Service Commitment, you may reject any such change and require Cingular to adhere to the language in this provision.

## CREDIT REPORTING AUTHORIZATION

You authorize Cingular to: (a) disclose your account information, including your payment history and confidential information, to credit reporting agencies or private credit reporting associations, and (b) periodically obtain and use your credit report and other credit information from any source in connection with Cingular's offering of wireless and other services. You understand that if you fail to fulfill the terms of your credit obligations under this Agreement, Cingular may report your failure to a credit reporting agency.

## MISCELLANEOUS

This Agreement, the signature or rate summary sheet, the terms included in the rate brochure(s) describing your plan and services, terms of service for products and services

12

not otherwise described herein that are posted on applicable Cingular websites, and any documents expressly referred to herein or therein, make up the complete agreement between you and Cingular, and supersede any and all prior agreements and understandings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. The foregoing does not apply to the prohibition against class or representative actions that is part of the arbitration clause; if that prohibition is found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void. Cingular may assign this Agreement, but you may not assign this Agreement without our prior written consent. The law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law. Your caller identification information (such as your name and phone number) may be displayed on the equipment or bill of the person receiving your call; technical limitations may, in some circumstances, prevent you from blocking the transmission of caller identification information. You consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our services or other matters we believe may be of interest to you. In any event, we reserve the right to contact you by any means regarding customer service related notifications, or other such information. The original version of this Agreement is the English language. Any discrepancy or conflicts between the English version and any other language version will be resolved with reference to and by interpreting the English version.

13



**cingular**
raising the bar ᴿ<sub>..</sub>꒐꒐ SM



79303

Cingular and the graphic icon are registered trademarks of Cingular Wireless, LLC. Raising The Bar is a service mark of Cingular Wireless, LLC. © 2005 Cingular Wireless, LLC. All rights reserved.



**TAB 2**

What if I am unsatisfied with the resolution AT&T offers me for a problem I am experiencing? 

**QUESTION:**

What if I am unsatisfied with the resolution AT&T offers me for a problem I am experiencing?

**ANSWER:**

AT&T Mobility ("AT&T") (formerly Cingular Wireless) is committed to resolving all disputes in a fair, effective, and cost-efficient manner. Accordingly, every customer's Service Agreement provides for disputes to be resolved in binding arbitration or Small Claims Court. AT&T's arbitration provision, which is set forth verbatim below, has been designed to make arbitration as convenient and inexpensive for our customers as possible. Among other things, it specifies that AT&T will bear all of the costs of arbitration (unless an arbitrator determines that a customer's claims are frivolous), and that, under certain circumstances (explained in the arbitration provision), AT&T will pay a premium to you and your attorney if you receive an arbitration award greater than the value of AT&T's settlement offer. This right to attorney's fees supplements any right that you may have under applicable law (as explained in the provision).

As part of AT&T's commitment to the fair, effective, and cost-efficient resolution of all disputes, AT&T has made its current arbitration provision available to all current and former customers – including customers who were customers of Cingular Wireless, the former AT&T Wireless, BellSouth Mobility, Ameritech Mobile, Pacific Bell Wireless, SBMS, SNET Mobility, and SBC Wireless. AT&T will abide by the terms of its current arbitration provision in all instances. In particular, in those rare occasions when AT&T may have a claim against a current or former customer, AT&T will arbitrate that claim or bring it in small claims court, even if a predecessor company's arbitration provision entitles AT&T to pursue such claims in any court that has jurisdiction. Customers whose contracts include arbitration provisions that differ from this current arbitration provision may, of course, arbitrate pursuant to the terms of those contracts if they prefer to do so. Similarly, it you are a former customer whose contract did not include an arbitration provision, you may arbitrate any dispute you may have under the current arbitration provision.

**DISPUTE RESOLUTION BY BINDING ARBITRATION**

**Please read this carefully. It affects your rights.**

**Summary:**

Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 800-331-0500.  **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction**. Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), AT&T will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute.

**Arbitration Agreement:**

(1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the

subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement. References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General Counsel, AT&T Mobility LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled.

You may download or copy a form Notice and a form to initiate arbitration from here: http://www.wireless.att.com/arbitration-forms.

(3) After AT&T receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. (You may obtain information that is designed for non-lawyers, about the arbitration process at http://www.wireless.att.com/arbitration-information). All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for herein, AT&T will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is:

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and greater than the value of AT&T's last written settlement offer made before an arbitrator was selected:

then AT&T will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims

court in the county of your billing address ("the premium") instead of the arbitrator's award; and
- pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award.

(6) The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU **AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require AT&T to adhere to the language in this provision if a dispute between us arises.

*If you are viewing information on devices or services, please note: content reflects instructions for devices and services purchased from AT&T.*
*Some differences may exist for devices not purchased from AT&T.*