# EXHIBIT 5

Case 1:08-cv-00416  Document 22-6  Filed 02/07/2008  Page 1 of 7



NOV 2 8 2005

MARIANO V. FAVAZZA
CLERK, CIRCUIT COURT
BY _____,_____ DEPUTY

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)

| | |
|---|---|
| JONATHAN NEAL BLITZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AT&T WIRELESS SERVICES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Cause No. 054-00281<br>)<br>) Division No. 5<br>)<br>)<br>) |

## ORDER

The Court, having fully considered Defendant AT&T Wireless Services, Inc.'s Motion to Compel Arbitration And Stay Action, the parties' briefing and the oral arguments, grants the motion for the reasons explained below.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jonathan Neal Blitz is an attorney who contracted with Defendant AT&T Wireless Services, Inc. ("AWS") for wireless telephone service.[1] It is undisputed that in his contract with AWS, Blitz agreed to arbitrate "all disputes or claims, including those against any subsidiary, parent or affiliate companies, arising out of any aspect of our relationship," with exceptions not pertinent here. The arbitration provision limits a customer's arbitration costs to $25 for claims under $1,000; does not restrict the award of attorneys' fees if such fees are available under applicable law; permits customers to bring suit in small claims court; and prohibits class actions or class arbitrations.

In May 2004, Blitz transferred his wireless service to another carrier, thus terminating his

---

[1] In October 2004, AWS merged with Cingular Wireless LLC ("Cingular"). AWS became New Cingular Wireless Services, Inc., which is a wholly-owned subsidiary of Cingular.

AWS service. Blitz alleges that AWS retained a $4.72 credit balance.[2] In February 2005, Blitz filed a petition seeking to represent a nationwide class against AWS. He alleges that AWS's retention of his credit balance constitutes conversion, breach of a bailment contract, and unjust enrichment.

In response, AWS requested that Blitz pursue his claims through arbitration or small claims court. AWS also offered to make Cingular's arbitration provision available to Mr. Blitz.

Cingular's arbitration provision is similar to AWS's arbitration provision in several respects. Specifically, the Cingular provision does not restrict the award of attorneys' fees if such fees are available under applicable federal or state law; it permits customers to bring suit in small claims court; and it prohibits class actions or class arbitrations. The Cingular provision contains additional features that make arbitration more accessible for customers, however. It provides that Cingular will pay all costs of arbitration (unless a claim is deemed frivolous as measured by Federal Rule of Civil Procedure 11). It also requires an arbitrator to award attorneys' fees if a customer is awarded the amount of his claim or more, regardless of whether such fees are authorized by applicable law. Cingular has made its arbitration provision available to all former AWS customers as a matter of company policy, which it has posted on its web site at http://www.cingular.com/disputeresolution.

After Blitz declined to arbitrate, AWS moved to compel arbitration and stay this action.

## DISCUSSION

As an initial matter, the parties disagree about which arbitration provision applies. Blitz argues that Cingular's arbitration provision does not apply because it is an unaccepted offer to modify his contract with AWS. AWS contends that the matter is not one of contract; rather, it is whether a defendant's across-the-board practice of making available the features of an improved arbitration provision moots challenges to the original arbitration provision.

---

[2]   AWS's terms and conditions state that the customer "agree[s] any amounts under $10 will not be
(cont'd)

Cases around the country hold that a defendant may moot challenges to an arbitration provision by waiving the challenged features.[3] Cingular has made its arbitration provision available to all former AWS customers; its policy of doing so is posted on its web site. Therefore, the Court holds that, because Blitz is entitled to arbitrate under Cingular's arbitration provision, his challenges to the features of the AWS arbitration provision not contained in Cingular's arbitration provision are moot.

Both the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and Missouri law embody strong policies favoring arbitration. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626 n.4 (Mo. 1997). At the heart of this case is Blitz's argument that his arbitration agreement is unconscionable. Under Missouri law, a contractual provision can be held unconscionable only if it is "one 'such as no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other.'" *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. App. E.D. 2003) (citation omitted). As the party resisting arbitration, Blitz bears the burden of demonstrating unconscionability. *See, e.g., State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 128 (Mo. 1995).

Blitz chiefly attacks the arbitration provision's requirement that he arbitrate on an individual basis instead of representing a class, as he seeks to do here. He relies on a recent decision, *Whitney*

---

(... cont'd)

refunded to cover [the] costs of closing your account."
[3] *See, e.g., Zobrist v. Verizon Wireless*, 822 N.E.2d 531, 539 (Ill. Ct. App. 2004) ("Verizon has already stipulated to a waiver of [the cost-sharing] provision, which, in effect, serves to moot the plaintiff's argument" concerning arbitration costs); *Zuver v. Airtouch Communications, Inc.*, 103 P.3d 753, 763 (Wash. 2004) (defendant's offer "to 'defray the cost of arbitration'" mooted plaintiff's argument) (citation omitted); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 n.3 (7th Cir. 2003) (rejecting plaintiffs' argument that "offer to pay all costs of arbitration constitutes an offer to rewrite the Arbitration Agreement"); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002) ("Conseco's offer to pay the costs of arbitration and to hold the arbitration in the Larges' home state . . . mooted the issue"); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 n.3 (5th Cir. 2004) (reversing district court's holding that offer to pay costs was "invalid" unilateral revision to contract, because "what is at issue here is whether *these* plaintiffs will be required to pay prohibitive arbitration fees and costs") (emphasis in original).

*v. Alltel Communications, Inc.*, 173 S.W.3d 300 (Mo. App. W.D. 2005), in which the Western District Court of Appeals held that Alltel's arbitration provision was unconscionable.

Cingular's arbitration provision is distinguishable from Alltel's. First, Cingular's provision allows for cost-free arbitration. Alltel's provision, on the other hand, imposed "prohibitive[]" costs on customers. *Whitney*, 173 S.W.3d at 314. Second, Alltel's arbitration provision forbade an arbitrator from awarding attorneys' fees. *Id.* at 313. By contrast, Cingular's arbitration provision provides for attorneys' fees in a wider array of circumstances than in court actions.[4] Third, Cingular's arbitration provision contains no prohibition on punitive, exemplary, or consequential damages. Under Alltel's arbitration provision, the arbitrator lacked the "power or authority" to award such damages. *Id.* at 304. Therefore, while Alltel's provision contained several features, apart from its class-action prohibition, that made it difficult for individuals to obtain relief for small claims, Cingular's provision presents no such barriers.

There are also differences in the manner by which the arbitration provisions were accepted. Blitz consented to arbitrate any disputes when he originally signed up for AWS service; it is undisputed that he had 30 days to cancel service without penalty. Moreover, Blitz, who is an attorney, cannot claim that he was surprised by the arbitration provision. The rule that a person is presumed to have read his contractual agreements applies with even greater force to a sophisticated party like Blitz. In stark contrast, the plaintiff in *Whitney* received the arbitration provision in a billing insert mailed to him five years after he had become an Alltel subscriber.

The Court also notes that the Western District itself specifically distinguished a case upholding an earlier version of Cingular's arbitration provision that was not as favorable to customers

---

[4] Under Cingular's arbitration provision, Blitz would be entitled to attorneys' fees if he were awarded $4.72 or more. He would have no such entitlement if he litigated the matter in court, because attorneys' fees are not available for his common-law claims.

as Cingular's current arbitration provision (or the relevant AWS arbitration provision). The court in *Whitney* differentiated *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004), by explaining that "the record established that the plaintiff's rights could be vindicated through arbitration under the contractual provisions and factual circumstances involved in that case." 173 S.W.3d at 313 & n.10. These distinctions are consistent both with *Whitney* and the vast majority of cases that have examined the enforceability of class-action waivers in arbitration provisions. In those cases, the arbitration provisions are generally upheld so long as they do not impose prohibitive costs of arbitration, bar a customer from recovering statutory attorneys' fees, or place excessive limitations on an arbitrator's ability to award the relief that would be available in court. Cingular's arbitration provision does not transgress any of these limitations. Therefore, this case is distinguishable from *Whitney* and the Court holds that Cingular's arbitration provision is not unconscionable.[5]

Blitz has urged this Court to interpret *Whitney* as imposing a rule that all class-arbitration waivers are unconscionable. *Whitney* does not purport to constitute an across-the-board rule. Indeed, the Federal Arbitration Act precludes reading *Whitney* in this way.

First, such a reading of *Whitney* would require the Court to apply a different and less stringent standard for proving unconscionability than the generally applicable one under *Smith*, 113 S.W.3d at 298. It cannot be said that a customer would have to be out of his senses or delusional to agree to Cingular's (or AWS's) arbitration provision.

---

[5] The Court's conclusion would be no different if the AWS arbitration provision were applicable. The only feature of the AWS provision (other than the class-action prohibition) that Blitz has challenged is the requirement that customers pay $25 to arbitrate claims under $1,000. However, Cingular has waived that $25 fee, which moots Blitz's argument that it is too costly to arbitrate under AWS's provision. *See, e.g., Zuver*, 103 P.3d at 763 ("we refuse to ignore Airtouch's offer to pay the arbitration fees"). Moreover, there is nothing unreasonable about an arbitration provision that sets the maximum cost of arbitration at $25, which is substantially less than the $167 it costs to file a petition in this Court. *See Rosen v. SCIL, LLC*, 799 N.E.2d 488, 496-97 (Ill. Ct. App. 2003) (agreeing
(cont'd)

Second, requiring class arbitration would eliminate "the simplicity, informality, and expedition" that are the hallmarks of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). As a result, businesses operating in Missouri will be strongly discouraged from using arbitration provisions. That would "frustrate the purpose[s]" (*Livadas v. Bradshaw*, 512 U.S. 107, 116 (1994)) of the Federal Arbitration Act, which was enacted to foster the resolution of disputes through arbitration. Accordingly, Blitz's reading of *Whitney* is preempted.[6]

* * * * *

WHEREFORE, the Court finds that AWS's Motion to Compel Arbitration should be, and hereby is, GRANTED. The matter is hereby referred to individual arbitration, and further litigation in this Court is stayed pending resolution of the arbitration.

SO ORDERED

_____
DAVID L. DOWD
Circuit Judge

Date: 11/28/05

cc: Attorneys of Record

---

(... cont'd)

with defendants that "because it costs $221 to file a lawsuit in Cook County, an arbitration fee of $125 would be reasonable").

[6] *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 364 (Tenn. Ct. App. 2001) ("Even if we were to conclude that the ... Legislature specifically intended on providing class relief under [the statute at issue], the Supremacy Clause of the Federal Constitution would preclude us from invalidating an arbitration agreement otherwise enforceable under the FAA simply because a plaintiff cannot maintain a class action.").