IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORRIS FIDDLER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC d/b/a The New AT&T f/k/a CINGULAR WIRELESS, a Delaware limited liability company, M-QUBE, INC., a Delaware corporation, and VERISIGN, INC., a Delaware corporation,<br><br>Defendants. | Case No. 1:08-cv-00416<br><br>DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS |

I, Richard A. Nagareda, hereby declare as follows:

1. I am a tenured Professor of Law at Vanderbilt University Law School with thirteen years of experience as a teacher and scholar in the area of complex civil litigation—particularly, class actions and other forms of aggregate litigation. In 2005, I was appointed Director of the Law School's Cecil D. Branstetter Litigation and Dispute Resolution Program. In 2006, I was appointed to the Tarkington Chair in Teaching Excellence, a three-year rotating chair. My teaching in recent years has included courses on Complex Litigation, Evidence, Administrative Law, and a year-long Civil Litigation Capstone Seminar for third-year law students interested in advanced study of the civil justice system.

2. Prior to joining the legal academy in 1994, I served as a law clerk for Judge Douglas H. Ginsburg of the United States Court of Appeals for the District of Columbia Circuit. I subsequently practiced law as an Attorney-Advisor in the Office of Legal Counsel of the

1

United States Department of Justice and, thereafter, as a litigation associate with the law firm of Shea & Gardner in Washington, D.C. (now, part of the Goodwin Procter firm). I hold an A.B. degree in political science from Stanford University (1985) and a J.D. degree from The University of Chicago Law School (1988).

3. A copy of my curriculum vitae is attached to this declaration.

4. My articles on class action litigation have appeared in the Columbia Law Review, the Georgetown Law Journal, the Harvard Law Review, the Michigan Law Review, the Texas Law Review, and the UCLA Law Review, among other scholarly journals. In 2003, the American Law Institute appointed me as Associate Reporter for its project on the Principles of the Law of Aggregate Litigation. In 2007, the University of Chicago Press published my scholarly book *Mass Torts in a World of Settlements*.

5. As part of my ongoing scholarly research, I have written an article entitled *Aggregation and its Discontents: Class Settlement Pressure, Class-Wide Arbitration, and CAFA*, which was published in the November 2006 issue of the Columbia Law Review (at 106 COLUM. L. REV. 1872). The issue includes several scholarly articles that, like mine, were prepared for a May 2006 conference sponsored by the Institute for Law & Economic Policy. In July 2006, I posted a preliminary draft of the article on the Social Science Research Network (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=920833). The final version, as it appears in print, differs in only minor respects from the preliminary draft, in keeping with the usual editorial process of law reviews. Apart from a summer research grant from Vanderbilt University Law School, I received no other financial support for the preparation of the article. No individual or organization exercised editorial review over the views expressed in the article.

6.  In *Aggregation and its Discontents*, I unite the discussion of three significant debates in the law of aggregate litigation. Two of those debates bear upon matters that I understand to be involved in the present case. The first and most directly pertinent debate concerns challenges to provisions in consumer contracts with providers of goods or services that not only call for arbitration of disputes but also waive the opportunity to conduct the arbitration proceeding on an aggregate basis (or, for that matter, to bring suit by way of a conventional class action or consolidated litigation). Existing commentary and judicial decisions have split over the permissibility of these waivers of class-wide arbitration—in particular, over whether such waivers should be deemed unconscionable as a matter of contract law.

7.  In my article, I describe the inquiry that should govern the permissibility of such waivers. I suggest that courts should ground the unconscionability inquiry in the underlying principle—repeatedly stated by the Supreme Court of the United States in its decisions under the Federal Arbitration Act—that, by agreeing to arbitrate disputes, consumers do not forgo the rights of action afforded to them by substantive law. Rather, consumers merely agree to dispute resolution in a more streamlined and informal process, as compared to conventional civil litigation. In short, the key question in a given instance is whether consumers may effectively vindicate their private rights of action in the arbitration process. In keeping with this principle, I argue that waivers of class-wide arbitration are impermissible when they amount, in practical terms, to the effective elimination of consumers' private rights of action—something that legislation might do but that arbitration clauses in private contracts lack authority to do. I go on to discuss the considerations that should bear upon the determination whether a waiver of class-wide arbitration effectively eliminates a private right of action in a given instance, with particular attention to small-stakes consumer claims. I contend that courts should make an informed

3

prediction of the market for legal representation of consumers in the absence of the opportunity to aggregate claims—specifically, that courts should ask whether there are substantial grounds on which to believe that such a market for representation would exist. Relevant considerations for such a prediction include not only the costs associated with the bringing of claims (*e.g.*, filing fees and the costs of the arbitration proceeding) but also the potential financial upside for both consumer and attorney and the applicable regime for attorneys' fees (*e.g.*, whether fee shifting is available and whether the fee would be calculated by the lodestar method).

8. My article places me between two extreme positions in the scholarly literature on waivers of class-wide arbitration. I neither accept that all class waivers are categorically unenforceable when claims are small, nor endorse the view that class waivers are categorically enforceable so long as the arbitration provision does not restrict the menu of remedies available to the consumer. Under the approach set forth in my article, many arbitration provisions with which I am familiar would likely be unenforceable when claims are small, because they do not otherwise provide a sufficient incentive for consumers and attorneys to pursue such claims.

9. Another part of the article analyzes the contention that class certification can exert an undue, illegitimate pressure on defendants to settle litigation. Among the points I make in this part of the article is that class certification is inappropriate where the legislature has included in substantive law other measures by which to facilitate the bringing of claims on an individual basis: *e.g.*, statutory damages not keyed to the actual losses suffered by consumers. The adding up of statutory damages by way of class certification would amount, I contend, to an inappropriate form of double counting that would disrupt, rather than advance, the remedial scheme of underlying substantive law.

4

10. After I had completed the last round of changes in the Columbia Law Review editorial process, I was asked by counsel for AT&T Mobility LLC ("ATTM") (formerly Cingular Wireless LLC) to review a revised version of the arbitration clause used in ATTM's consumer contracts ("the 2006 Clause") and to provide my opinion on the permissibility of the 2006 Clause in light of the analysis in my article. I agreed to do so under the standard terms that I use for outside consulting work: a rate of $500 per hour, with a $5000 retainer (against which I have applied my initial hours of work).

11. In my opinion, the 2006 Clause should not be deemed unconscionable. The 2006 Clause represents an innovative measure likely to facilitate the fair and efficient resolution of disputes between individual consumers and ATTM. Indeed, I have never seen an arbitration provision that has gone as far as this one to provide incentives for consumers and their prospective attorneys to bring claims. Applying the analysis in my article, I conclude that the 2006 Clause reduces dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate the development of a market for fair settlements of such claims, and provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to settle their dispute.

12. As to costs, Paragraph 3 of the 2006 Clause commits ATTM to pay all filing, administration, and arbitrator fees for arbitration. The same Paragraph provides for the possibility of using a streamlined, low-cost hearing process for claims of $10,000 or less, the usual dollar range for the kinds of consumer claims of greatest concern in the debate over waivers of class-wide arbitration.

13. Paragraph 4 of the 2006 Clause provides for a "premium" to both consumers and their attorneys, if any, in the event that the arbitrator finds in favor of the consumer on the merits

of the claim and issues an award greater than the value of ATTM's last written settlement offer made before the arbitrator was selected. The premium for the consumer would be at least $5000—the median of the various states' jurisdictional limits for small claims court. My further understanding is that, in setting the premium for the attorney at twice the fees that he or she "reasonably accrues for investigating, preparing, and pursuing [the consumer's] claim in arbitration," Paragraph 4 calls for the use (with doubling) of the lodestar method of fee calculation. The lodestar method decouples the premium for the attorney from the magnitude of the award to the consumer. The lodestar method would calculate the premium, instead, by multiplying the number of hours reasonably spent on the specified activities times a reasonable hourly rate (with further multiplication by two). This approach is in keeping with the longstanding use of the lodestar method in such settings as civil rights litigation, where the law seeks to facilitate the bringing of claims that do not necessarily result in financial awards to individual claimants of a magnitude that otherwise would be likely to induce legal representation.

14.  My informed prediction is that the availability of the foregoing premium will drive settlement offers toward levels comparable to those that legislatures have understood to be sufficient to facilitate individual claims in settings involving statutory damages. In economic terms, settlement offers in ATTM arbitrations will need to account not only for the expected value of the consumer's claim (in the manner of conventional settlement offers in the civil justice process) but also the expected value of the premium (*i.e.*, the premium discounted by the likelihood that it will be triggered). In providing for statutory damages to facilitate individual claims under a variety of statutes, legislatures routinely have selected dollar amounts considerably less—sometimes, by an order of magnitude—than those described in Paragraph 4

of the 2006 Clause. *See, e.g.*, 47 U.S.C. § 227(b)(3)(B) (2000) ($500 in statutory damages per junk fax transmitted in violation of the Telephone Consumer Protection Act of 1991); 47 U.S.C. § 551(f)(2)(A) ($1000 in statutory damages per violation of consumer privacy under the Cable Communications Policy Act of 1984). Paragraph 5 of the 2006 Clause goes on to underscore that the premium described in Paragraph 4 supplements any right to attorney's fees and expenses that consumers already have under applicable law.

15.  As I discussed in my article, courts properly, in my view, have exercised their discretion to deny class certification outside the arbitration context where the legislature already has provided for statutory damages to facilitate claiming on an individual basis. The waiver of class-wide arbitration by contract in this case is no more unconscionable than the judicial decisions denying class certification outside the arbitration setting in the presence of statutory damage provisions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 5, 2008.

_____
Richard A. Nagareda

## CERTIFICATE OF SERVICE

I, Sarah E. Reynolds, an attorney, hereby certify that a true and correct copy of **DECLARATION OF RICHARD A. NAGAREDA IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS** was served on the following counsel of record via electronic delivery on February 7, 2008:

| | |
|---|---|
| Jay Edelson<br>Myles McGuire<br>John Blim (Of Counsel)<br>KAMBEREDELSON, LLC<br>53 West Jackson Blvd.<br>Suite 1530<br>Chicago, IL  60604<br>(312) 589-6370<br><br>Bart Murphy<br>Ice Miller LLP<br>2300 Cabot Drive<br>Lisle, IL  60532<br>(630) 955-6392 | |

Respectfully submitted,

/s/Sarah E. Reynolds

Dated: February 7, 2008

*Attorney for Defendant AT&T Mobility LLC*