UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORRIS FIDDLER, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC d/b/a The New AT&T f/k/a CINGULAR WIRELESS, a Delaware limited liability company, M-QUBE, INC., a Delaware corporation, and VERISIGN, INC., a Delaware corporation,<br><br>    Defendants. | Case No. 1:08-cv-00416<br><br>MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND |

Defendants m-Qube, Inc. ("m-Qube") and VeriSign, Inc. ("VeriSign") (collectively, the "m-Qube Defendants")[1] respectfully submit the following Memorandum in Opposition to Plaintiff's Motion to Remand this case to state court.[2]

## INTRODUCTION

Plaintiff seeks to remand this case to state court on the sole ground that the amount in controversy does not exceed the $5 million threshold required to confer jurisdiction under the Class Action Fairness Act of 2005 (hereinafter "CAFA"). Plaintiff does not dispute that the other requirements of CAFA are met.

The allegations contained in Plaintiff's Complaint place into controversy all charges generated by AT&T and the m-Qube Defendants from allegedly unauthorized mobile content products and services in the state of Illinois. This amount itself, as the attached Declarations of

---

[1] m-Qube is a wholly-owned subsidiary of defendant VeriSign.

[2] Defendant AT&T Mobility LLC (hereinafter "AT&T") has submitted a declaration in support of the m-Qube Defendants' Opposition to Plaintiff's Motion to Remand. *See* Decl. of Ellen Roberson (attached hereto as Exhibit 1).

1

Ellen Roberson of AT&T and David Harty of VeriSign, Inc.[3] confirm, greatly exceeds the $5 million jurisdictional minimum.[4] In addition to his broad claims for compensatory relief, Plaintiff also seeks exemplary damages, attorneys' fees, and injunctive relief. Each of these additional types of relief significantly raises the amount in controversy. Consequently, the m-Qube Defendants have more than met their burden of establishing that the amount in controversy exceeds $5 million. This Court should therefore deny Plaintiff's motion to remand this case to state court.

Because the m-Qube Defendants have established that federal jurisdiction is warranted under CAFA, and because the m-Qube Defendants had an objectively reasonable basis to remove this action to this Court, Plaintiff is not entitled to attorneys' fees or costs.

## ARGUMENT

I. **DEFENDANTS HAVE PROVEN BY A PREPONDERANCE OF THE EVIDENCE THAT THE AMOUNT IN CONTROVERSY EXCEEDS $ 5 MILLION.**

CAFA gives federal district courts original jurisdiction over federal and state class actions where the proposed plaintiff class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B), minimal diversity of state citizenship exists between any defendant and any plaintiff class member, *id.* § 1332(d)(2)(A), and the individual class members' aggregated claims yield an amount in controversy that exceeds $5,000,000 "exclusive of interest and costs." *Id.* §§ 1332(d)(2) & 1332(d)(6); *Hart v. Fedex Ground Package Systems, Inc.*, 457 F.3d 675, 677 (7th

---

[3] The Declaration of David Harty is attached hereto as Exhibit 2.

[4] Plaintiff's counsel here withdrew a motion to remand in another case, involving a subset of the unauthorized charges at issue here. *See Bradberry v. mBlox, Inc.* (Case No. C-0705298-CW). In *Bradberry*, the plaintiff, who is represented by the same counsel that represents Plaintiff Fiddler, voluntarily withdrew his motion to remand the case to state court after the defendant aggregator, mBlox, Inc. filed its opposition to the motion. Plaintiff admitted in his withdrawal papers that aggregator mBlox satisfied its burden of demonstrating that the amount in controversy exceeded $5 million. (*See* Pl.'s Withdrawal of Motion to Remand at p. 2) (attached hereto as Exhibit 3).

Cir. 2006). A defendant in a class action filed in state court that meets these requirements may remove the case to federal district court. *See* 28 U.S.C. §§ 1446(a), 1453(b).

Plaintiff does not dispute that the first two requirements for removal under CAFA -- a class consisting of more than 100 members and diversity of citizenship -- are met. *See* Pl.'s Mem. in Support of Motion to Remand ("Pl.'s Remand Mem.") at 1. Rather, Plaintiff argues that this action fails to meet the CAFA amount-in-controversy requirement. Plaintiff is incorrect.

### A.     Evidentiary Standard

The removing party bears the burden of establishing that each of CAFA's elements for the exercise of federal jurisdiction are met. *See Brill v. Countrywide Homes Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). "Where the complaint is silent as to the amount of damages and does not state the class will seek an amount below the jurisdictional minimum, the removing party must provide 'a good-faith estimate of the stakes' that is plausible and supported by a preponderance of the evidence." *Hall v. Triad Financial Services, Inc.*, No. 07-CV-0184, 2007 WL 2948405, at *1 (S.D. Ill. Oct. 10, 2007) (attached hereto as Exhibit 4) (quoting *Oshana v. Coca-Cola*, 472 F.3d 506, 511 (7th Cir. 2006)). To determine the amount in controversy, courts in the Seventh Circuit look to the complaint and additional evidence that sheds light on plaintiff's allegations at the time the case was removed. *See Hall*, 2008 WL 3949405, at *1; *Schmimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004); *Harmon v. OKI Systems*, 115 F.3d 477, 479-80 (7th Cir. 1997). Thus, courts within the Seventh Circuit have examined declarations or affidavits to determine whether the amount in controversy requirement was met. *See, e.g.*, *Meriden Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (holding that a proponent of federal jurisdiction may establish the amount in controversy by, among other things, introducing evidence "in the form of affidavits from the defendant's employees and expert").

Because Plaintiff's complaint does not plead a specific amount in controversy, the m-Qube Defendants' burden is to provide a "good faith estimate of the stakes that is plausible and supported by the preponderance of the evidence." *Hall*, 2008 WL 2949405, at *1; *Oshana*, 472 F.3d at 511. Defendants are not obligated to prove or disprove liability or damages with respect to the plaintiff or the putative class members. *See Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, *15 (E.D. Cal. Apr. 30, 2007) (attached hereto as Exhibit 5) (citing *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) (preponderance of the evidence standard does not place a daunting burden on the defendant to prove the plaintiff's claims for damages)).

### B.    Plaintiff's Complaint Has Put At Least $5 Million In Controversy

The amount in controversy is measured by the allegations in the complaint, not what damages a defendant may actually be found to owe. *See Kessler v. American Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *10 (N.D. Ill. Nov. 14, 2007) (attached hereto as Exhibit 6) (establishing the amount in controversy threshold "does not require [the defendant] to prove that a favorable judgment for the plaintiff will exceed the statutory threshold; rather, 'the demonstration concerns what the plaintiff is claiming . . . , not whether the plaintiff is likely to win or be awarded everything he seeks'") (quoting *Brill*, 427 F.3d at 448, 499). In addition, claims of all plaintiffs are aggregated for the purposes of determining the amount in controversy under CAFA. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members *shall be aggregated* to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.") (emphasis added).

Accordingly, it is appropriate to consider the full spectrum of a plaintiff's request for relief in determining the amount in controversy. Here, not only does the Plaintiff seek "all economic, monetary, actual, consequential, [] compensatory" and "exemplary damages" that

4

were allegedly caused by the m-Qube Defendants' conduct (Compl., Prayer for Relief ¶ e), he also requests injunctive relief as necessary to protect the interests of the putative class. (Compl., Prayer for Relief ¶ i). Plaintiff also seeks costs and attorneys' fees. (Compl., Prayer for Relief ¶ c).

### 1. Plaintiff's Request for Compensatory Damages Alone Exceeds $5 million.

The amount in controversy with respect to compensatory damages alone exceeds $5 million. In Count I, Plaintiff alleges, among other things, that AT&T "breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by billing Plaintiff and the Carrier Class for products or services, the purchase of which they never authorized." Compl. ¶ 57.

In Count II, Plaintiff alleges that "m-Qube and VeriSign ha[ve] received and retain money belonging to Plaintiff and the Aggregator Class resulting from their billing and collecting significant sums of money in unauthorized mobile content charges." Compl. ¶ 61. Further, Plaintiff alleges that "under principles of equity and good conscience, m-Qube and VeriSign should not be permitted to retain the money belonging to Plaintiff and the aggregator class which m-Qube has unjustly received as a result of its actions." Compl. ¶ 63.

In Count IV, Plaintiff alleges a violation of Illinois' Computer Tampering Statute, 720 ILCS 5/16D-3 against both the m-Qube Defendants and AT&T. Compl. ¶¶ 69-75. Plaintiff seeks monetary damages for the amount the putative classes were charged for allegedly unauthorized mobile content products and services by AT&T and the m-Qube Defendants. Compl. ¶¶ 74-75.

Plaintiffs allegations in these counts, at a minimum, place into controversy all charges by AT&T or the m-Qube Defendants for allegedly unauthorized mobile content products and

5

services in the State Illinois.

As the Declaration of Ellen Roberson demonstrates, in 2007 alone, AT&T's total gross revenue from third-party mobile content purchases by for subscribers from Illinois was $11,398,423.00. *See* Decl. of Ellen Roberson at ¶ 5 (Ex 1). Moreover, as detailed in the Declaration of David Harty, "since 2004, the retail value of the premium-rated messaging traffic processed on m-Qube's Gateway for wireless telephone subscribers with Illinois area codes has been over $32 million." *See* Decl. of David Harty ¶ 6 (Ex. 3). In addition to premium-rated messaging traffic, the m-Qube Defendants' messaging platforms also process other "mobile content products and services, including standard-rated and premium-rated messaging traffic. This additional traffic is significant and increases the aggregate retail value of the traffic processed on VeriSign messaging platforms" above the $32 million figure. *Id.* at ¶ 7. Therefore, it is beyond dispute that the charges for mobile content products and services in Illinois has greatly exceeded $5 million dollars.

Plaintiff does not specify a fraction of mobile content product and service charges that were allegedly unauthorized in his Complaint or in his Motion to Remand. Thus, as pleaded in Plaintiff's Complaint, all mobile content transactions in the state of Illinois are potentially unauthorized. Moreover, the m-Qube Defendants are not required to prove or disprove Plaintiff's liability or damages case for the purposes of determining the amount in controversy. *See Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (Ex. 5). Consequently, Plaintiff has placed all charges for mobile content products and services by AT&T or the m-Qube Defendants in the state of Illinois into controversy. As the Declarations of Ellen Roberson and David Harty noted above establish, this amount far exceeds the jurisdictional minimum for the amount in controversy. *See* Decl. of Ellen Roberson at ¶ 5 (Ex. 1); Decl. of

6

David Harty at ¶ 6 (Ex. 3).  Moreover, even were Plaintiff to specify a fraction of transactions he alleges to be unauthorized (which at this point would be too late because the amount in controversy is determined with reference to the facts as they stood at the moment of removal, *see Hall*, 2008 WL 3949405, at *1 (Ex. 4); *Schmimmer*, 384 F.3d at 404), a relatively small fraction of charged mobile content products and services in the state of Illinois would still exceed the jurisdictional minimum of $5 million.  As a result, Plaintiff's requests for compensatory damages alone exceed CAFA's $5 million amount in controversy requirement.

### 2. Plaintiff's Request for Exemplary (Punitive) Damages Substantially Augments The Amount In Controversy.

The amount Plaintiff has placed in controversy is also enhanced significantly by his request for punitive damages.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512-13 (7th Cir. 2006) (including the amount of punitive damages in analyzing the amount in controversy). Plaintiff has clearly placed the amount of punitive damages "in controversy" by (1) affirmatively alleging that Defendants have engaged in "a deliberate and willful scheme to cheat" customers (*see* Compl. ¶ 32), and (2) requesting punitive ("exemplary") damages upon a showing that Defendants' willful conduct caused the putative class's damages.  (*Id.*, Prayer for Relief ¶ i). Because punitive damages can equal whole-number multiples of compensatory damages, and since the compensatory damages alone exceed $5 million, Plaintiff's punitive damages claim would put him well over the minimum jurisdictional amount.  *See Buller v. Owner Operator Independent Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 757, 763 (S.D. Ill. 2006) (finding amount in controversy satisfied under CAFA in view of "constitutionally permissible award of two to three times" out-of-pocket damages); *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006) (holding that the amount in controversy is augmented by a constitutionally permissible range of punitive damages, which includes single digit multiples).

7

### 3. Plaintiff's request for injunctive relief further increases the value of the claims.

The amount in controversy is further enhanced by Plaintiff's request for injunctive relief. In the Seventh Circuit, the value of injunctive relief for the purposes of determining the amount in controversy is governed by the "either viewpoint" rule. *See Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir.2002). Under the either viewpoint rule, the jurisdictional amount is assessed by looking at either the benefit to the plaintiff or the cost to the defendant requested by the relief. *See Uhl*, 309 F.3d at 983; *Hall*, 2008 WL 3949405, at *8; *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997) (applying the either viewpoint rule to the pre-CAFA diversity jurisdiction amount in controversy).

Here, the costs associated with developing, implementing and enforcing the sort of customer validation system that Plaintiff seeks (*see* Compl. ¶¶ 23-24) are substantial. *See* Decl. of David Harty at ¶ 8 ) (Ex. 3) ("Such efforts would require m-Qube and VeriSign to expend well in excess of hundreds of thousands of dollars and invest significant other resources."). This additional amount that would be required to comply with injunctive relief requested augments the amount in controversy, as established by Plaintiff's damages requests, to a figure clearly in excess of $5 million.

## II. PLAINTIFF MAY NOT RECOVER ATTORNEYS FEES OR COSTS BECAUSE DEFENDANTS HAD AN OBJECTIVELY REASONABLE BASIS FOR REMOVAL

Plaintiff seeks an award of attorneys' fees and costs under 28 U.S.C. § 1447(c) because "Defendant's removal lacked an objectively reasonable basis for seeking removal." Pl.'s Remand Mem. at 7. This argument presumes – incorrectly, as demonstrated above – that removal was improper. *See* 28 U.S.C. § 1447(c) (permitting an award of costs and fees upon

issuance of "[a]n order remanding the case").  Moreover, Plaintiff's has not -- and cannot -- establish that Defendant's removal lacked an objectively reasonable basis.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked *an objectively reasonable basis* for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."); *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) ("the district court erred by awarding the plaintiffs' attorneys' fees because Pfizer's attempt to remove the case under CAFA was objectively reasonable.").

      The Supreme Court has explained the policy rationale underlying such fee awards:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Franklin Capital*, 546 U.S. at 140.  The "objectively reasonable" standard ensures that defendants do not "choose to exercise this right only in cases where the right to remove was obvious. . . . [T]here is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases."  *Id.* at 140.

      Courts may refuse to award attorneys fees *even after* granting a motion for remand.  *E.g.*, *Lott*, 492 F.3d at 793-94 (granting motion to remand but denying request for fee award); *Bemis v. Allied Property & Cas. Ins. Co.*, 2006 WL 1064067, at *2 (S.D. Ill. Apr. 20, 2006) (same) (attached hereto as Exhibit 7); *Ortiz v. Menu Foods, Inc.*, --- F. Supp. 2d ---, 2007 WL 3374594 (D. Haw. 2007) (attached hereto as Exhibit 8) (same).  That is, a finding that the removing party failed to establish CAFA jurisdiction by a preponderance of the evidence "does not mean that

9

[the party] lacked an objectively reasonable basis for removing the action to federal court." *Ortiz*, 2007 WL 3374594, at *17 (Ex. 8).

Therefore, Plaintiff is not entitled to any award of attorneys' fees under 28 U.S.C. § 1447(c).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand should be denied.

Respectfully submitted,

ICE MILLER, LLP

By ___/s/ Jenee M. Straub___
    One of its Attorneys

**Attorneys for**
**Defendants m-Qube and VeriSign**

Bart T. Murphy, Esq. (#6181178)
Jenée M. Straub, Esq. (#6270698)
ICE MILLER, LLP
2300 Cabot Drive
Suite 455
Lisle, Illinois  60532
630.955.0555
630.955.0662 (facsimile)

Pro Hac Vice:
Laura VanDruff Esq.
ARNOLD & PORTER, LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
202.942.5000
202.942.5999 (facsimile)