# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORRIS FIDDLER, individually and on behalf of a class of similarly situated individuals,<br><br>            Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC d/b/a The New AT&T f/k/a CINGULAR WIRELESS, a Delaware limited liability company, M-QUBE, INC., a Delaware corporation, and VERISIGN, INC., a Delaware corporation,<br><br>            Defendants. | Case No. 1:08-cv-00416<br><br>**DECLARATION OF DAVID F. HARTY IN SUPPORT OF DEFENDANTS M-QUBE AND VERISIGN'S OPPOSITION TO MOTION TO REMAND** |

I, David F. Harty, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am Director -- Product Management for the Global Messaging business of VeriSign, Inc. ("VeriSign"). m-Qube, Inc. ("m-Qube") is a wholly owned subsidiary of VeriSign. I have management and operational leadership responsibilities for m-Qube's mobile messaging solution (m-Qube's "Gateway").

2. I submit this declaration in support of Defendants m-Qube and VeriSign's Opposition to Motion to Remand. I have personal knowledge of the facts set forth in this declaration, and I could testify to these facts under oath from my own personal knowledge.

3. I have reviewed the Complaint in the case entitled *Fiddler v. AT&T Mobility, LLC., et al.* (Case No. 1:08-cv-00416), and I am aware of the allegations in the Complaint. I understand that Plaintiff is attempting to certify an Illinois class consisting of all wireless telephone subscribers in Illinois who were charged by m-Qube and/or VeriSign for mobile content services not authorized by the subscriber.

4.      m-Qube is a mobile messaging aggregator. m-Qube's Gateway provides a link between wireless service providers and mobile content providers, processing the delivery of and billing for mobile content products and services to wireless telephone subscribers. m-Qube has conducted this businesses in the United States since 2004.

5.      m-Qube does not have contractual relationships with wireless telephone subscribers. Therefore, m-Qube has limited information about what subscribers have been billed and what they have paid. However, m-Qube maintains records regarding the retail prices of mobile content processed on m-Qube's Gateway. These records are maintained in the ordinary course of m-Qube's business, and they are relied upon by m-Qube in conducting its business and responding to inquiries from its business partners.

6.      For purposes of this Declaration, I reviewed the m-Qube records showing the retail value of premium-rated messaging traffic processed on m-Qube's Gateway for wireless telephone subscribers. The data show that since 2004, the retail value of premium-rated messaging traffic processed on m-Qube's Gateway for wireless telephone subscribers with Illinois area codes has been over $32 million.

7.      In addition to m-Qube's Gateway, which processes premium-rated messaging traffic, other VeriSign messaging platforms also handle mobile content products and services, including standard-rated and premium-rated messaging traffic. This additional traffic is significant and increases the aggregate retail value of the messaging traffic that passes across VeriSign's messaging platforms.

8.      In addition to the retail value of the mobile content products and services processed on m-Qube's Gateway and VeriSign's other messaging platforms, the Complaint makes additional allegations and requests that would have further economic consequences for m-Qube and VeriSign. These include the costs of the injunctive relief Plaintiff seeks. I have also reviewed the Motion to Remand filed by Plaintiff in this action, and I understand that Plaintiff suggests therein that m-Qube could provide for a "safeguard," such as a "customer's signature or private access code" to redress his claims. The design, implementation, and enforcement a

mechanism to identify, verify, and correct the types of billing discrepancies that are at issue in this lawsuit, however, would require a substantial expenditure of money, time, and company resources. Such efforts would require m-Qube and VeriSign to expend well in excess of hundreds of thousands of dollars and invest significant other resources.

9.  I do not concede liability or attest that the damages claimed by Plaintiff are legitimate or recoverable.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at _BosTon, MA._ on February 14, 2008.

_David F. Harty_

- 4 -