# Exhibit 6



Slip Copy                                                                                                                            Page 1
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

Kessler v. American Resorts International's Holiday Network, Ltd.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Frank KESSLER, individually, and Wilson Merchan and Christine Merchan, individually and on behalf of a class, Plaintiffs,
v.
AMERICAN RESORTS INTERNATIONAL'S HOLIDAY NETWORK, LTD., ES Financial, Inc. and Aspen National Financial, Inc., Defendants.
Alan H. Slodki, individually and on behalf of all others similarly situated, Plaintiff,
v.
American Resorts International, Ltd., American Resorts International's Holiday Network Ltd., Sonnenschein Marketing Services, LLC, Sonnenschein Financial Services, LLC, Global Employee Management Services, LLC, Target Marketing of Illinois, Inc., International Resorts, L.P., Oyster Bay Club, N.V., Alpenland Resort Ltd. Limited Partnership, Walter N. Kosch, Thomas Lupina, and Robert Pioso, Defendants.
**Nos. 05 C 5944, 07 C 2439.**

Nov. 14, 2007.

Christopher V. Langone, Mark T. Lavery, James S. Shedden, Katherine A Hathaway, Lawrence Wiley Schad, Schad, Diamond & Shedden, P.C., Chicago, IL, David J. Philipps, Bonnie C. Dragotto, Mary Elizabeth Philipps, Gomolinski & Philipps, Ltd., Palos Hills, IL, for Plaintiffs.
Michael Lee Tinaglia, Jennifer Molly Wretzky, Law Offices of Michael Lee Tinaglia, Ltd., Rosemont, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge.
  **\*1** Before the Court are three motions. The first, by a plaintiff class represented by Alan H. Slodki, asks the Court to reconsider its preliminary certification of another class, led by Wilson and Christine Merchan, that has sued one of the same defendants over the same alleged events. In its motion, the *Slodki* class also asks the Court to reconsider its preliminary approval of a settlement reached by the *Merchan* class and that defendant, American Resorts International's Holiday Network (ARIHN). The second motion, by Frank Butler, seeks an order that would require ARIHN to pay Butler and the accounting firm Grant Thornton for work they performed to assess ARTHN's operational and financial soundness following their appointment by a judge of the Circuit Court of Cook County, Illinois, from which the *Slodki* suit was removed. The third motion, by the *Slodki* class, asks that the Court abstain from exercising its jurisdiction and remand their case to the Cook County Circuit Court under a provision of the Class Action Fairness Act of 2005.

  For the reasons set forth below, the Court grants the *Slodki* class's motion to reconsider the preliminary certification of the Merchan-led class and its preliminary approval of the settlement the Merchans have reached with ARIHN. The Court also grants the *Slodki* plaintiffs' motion to remand their case to the state court from which it was removed. Finally, as a result of its decision to remand, the Court terminates as moot Butler's motion.

### I. BACKGROUND

  This case concerns the management of a time share program operated by ARIHN and its parent American Resorts International, Ltd .(ART) (except where noted differently, the Court will use the term ARI to refer to both firms). A time share is a form of vacation-property ownership or financing. Owners of time share interests share the costs of maintaining vacation resorts and have the right to use the resorts at certain times of the year, depending on the terms of their contracts with the time share program.

  Procedurally, the case involves what were two separate lawsuits, which the Court consolidated in May 2007 after the earlier filed suit was removed to federal court from the Circuit Court of Cook County, Illinois. Because the trajectories of these overlapping actions are complex and bear on the Court's resolution of the motions before it, the Court sets out the history of the cases in some detail.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

**A. The *Slodki* Class Action**

In 2002, Alan H. Slodki, a member of the time share program, brought a suit in the Circuit Court of Cook County, Chancery Division, over ARI's imposition of maintenance fees that Slodki alleged breached his member contract. In February 2003, the state court judge certified a class composed of all current and former members of the timeshare program from whom ARI sought and collected maintenance fees and fees for certain service improvements (the *Slodki* class). Notice was sent to class members on June 1, 2005. Members had until July 8, 2005 to opt out of the class.

**\*2** After the class was certified, ARI told Slodki it could not repay the challenged fees without shutting down the time share program or raising membership fees to cover the cost of a judgment. The latter option would mean that to pay a judgment won by a class of the time share members, those same members' fees would be raised, leaving them with a pyrrhic victory. In response, the *Slodki* class hired a certified public accountant, Michael Felz, to review ARI's books. Felz concluded that ARI's weak financial position was the result of mismanagement and diversions of time share funds to other entities. In April 2004, the *Slodki* class sought appointment of a receiver to take over ARI's affairs.

In October 2005, after months of evidentiary hearings and negotiation over the *Slodki* class's motion, the state court entered an agreed order designating a court advisor to "review, assess and report to the Court on the current financial and operational health of the Defendants and the Holiday Network Time Share Program." The advisor chosen was Frank Butler.[FN1] Butler in turn recommended the court appoint Grant Thornton LLP, an accounting firm, to analyze and report on ARI's management and finances. Butler's charge was to monitor the time share program's operations and finances and report periodically to the court, particularly about material transactions outside the ordinary course of business. Grant Thornton's was to examine and report to the court on ARI and the time share program's books for the period of July 1, 2004 to June 30, 2005.

> FN1. Butler was not appointed to be a receiver. The October 2005 agreed order provides that "[t]he Court Advisor shall have no power, duty or responsibility to manage, direct, control or possess any aspect of the business operations of the Defendants, including any aspect of the Timeshare Program. All power, duty or responsibility to manage, direct, control or possess any aspect of the business operations of the Defendants, including any aspect of the Timeshare Program, shall remain fully and completely in the Defendants."

In the months after Butler's and Grant Thornton's appointments, during which the latter reviewed ARI's and the time share program's finances and prepared its report, Butler and Grant Thornton submitted regular invoices to ARI, which ARI failed to pay. In September 2006, ARI told the state court it was willing to pay Butler's accumulated fees but objected to paying Grant Thornton's because it disagreed with the tone and findings of the accountant's draft report. In December 2006, the chancery court ordered ARI to pay Grant Thornton's accumulated fees of $173,311.75 and Butler's of $57,770.58, each in three equal installments to be paid over the first half of 2007. After ARI failed to make the first of these scheduled payments on February 1, 2007, the state court revised the payment schedule in an order entered on February 15, Under this schedule, ARI made two of the required monthly payments, albeit late. In May 2007, Butler informed ARI he planned to seek an order from the court declaring the full amounts owed to him and Grant Thornton due immediately (the February 14 order revising the payment schedule provided for acceleration under conditions met by ARI's late monthly payments).

Meanwhile, in April 2007, in response to the findings of Felz and Grant Thornton, the *Slodki* class filed an amended complaint adding as defendants ARI's individual principals and entities controlled by them. Availing themselves of the Class Action Fairness Act of 2005, *see* 28 U.S.C. § § 1332(d)(2) & 1453, the new defendants removed the case to federal court in May 2007. The removal meant that Butler's motion seeking acceleration of the amounts owed to him and Grant Thornton was never heard by the state court.

**B. The *Kessler / Merchan* Suit and Proposed Settlement**

**\*3** In October 2005, shortly before Butler's appointment by the state court, another time share program member, Frank Kessler, filed suit in federal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 3
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

court. Kessler was a *Slodki* class member who had not opted out of the class. ARI did not seek dismissal of Kessler's action, despite its knowledge that Kessler was a member of the certified *Slodki* class. At a hearing on the pending motions, ARI's counsel said he did not have a good answer to the Court's question why ARI failed to move to dismiss Kessler's claims on this basis.

In Iris original complaint, Kessler named as defendants ARI and two debt-collection agencies (since terminated). Kessler alleged in his complaint that ARI breached the time share membership agreement he had signed in 1998 by losing ownership and control of a Caribbean resort. Kessler also alleged that ARI had attempted to collect maintenance and service fees to which it was not entitled under the ARI Holiday Network Agreement. Finally, Kessler alleged that the two debt-collection agencies had violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and Credit Repair Organizations Act, 15U.S.C. § 1679 *et seq.*, and two Illinois consumer protection statutes.

In February 2006, this Court granted Kessler's motion for leave to file an amended complaint. The amended complaint added two new plaintiffs, Wilson and Christine Merchan, who also had been members of the time share program. In the amended complaint, Kessler and the Merchans alleged that ARI had tried to collect fees to winch it was not entitled under its contracts with members and did not adjust maintenance fees downward to reflect the loss of the Caribbean resort. In addition, the Merchans asserted claims on behalf of a class composed of "all current or former members of American Resorts International's Holiday network time share program from whom ARI and ARIHN assessed and collected maintenance fees and services fees from and including January 1, 1999 through the present."The class claims against ARI concerned the loss of the Caribbean resort, the challenged assessments, and ARI's attempts to collect on these assessments.

In June 2006, this Court held an initial settlement conference at which ARI's counsel informed the Court there was a parallel state court action whose plaintiffs were likely to challenge any class-wide settlement. Because the Court anticipated it would have to decide that challenge-as it is now called upon to do-it referred the settlement talks between the Merchans and ARI to Magistrate Judge Jeffrey Cole. In March 2007, the Merchans as putative class representatives and ARI executed a proposed settlement agreement. Under its terms, the putative class releases all claims against ARI, including all claims in the *Slodki* litigation. In exchange, class members receive some mix of "grants" entitling them to weeknight lodging and vouchers for meals, drinks, and spa treatments at ARI's two remaining resorts, which are in Austria. The settlement makes this in-kind consideration freely transferable. The Merchans each would receive a $5,000 incentive payment for representing the class.

**\*4** The *Slodki* case was removed to federal court on May 2, 2007 and was initially assigned to another judge. On May 9, 2007, the Court granted the Merchans' motion for preliminary class certification for settlement purposes and preliminary approval of the settlement. On May 16, 2007, the Court granted ARI's motion for a finding of relatedness between the two suits and, upon reassignment of the *Slodki* case to this Court, consolidated them for pretrial purposes on June 12, 2007. The *Slodki* plaintiffs then moved the Court to reconsider its ruling preliminarily certifying the *Merchan* class and approving the proposed class settlement in that case.

## II. DISCUSSION

**A. The *Slodki* Class's Motion to Reconsider Preliminary Certification of the *Merchan* Class and Preliminary Approval of the Proposed *Merchan* Settlement**

The *Slodki* class asks the Court to reverse its preliminary certification of the *Merchan* class and its preliminary approval of the settlement reached between that class and ARI. In support of this motion, the *Slodki* class makes two key arguments.

First, it contends that because the Merchans did not pay the fees that are at the root of th is litigation and were not eligible active members of the time share program when ARIHN lost the Caribbean resort in 2003, they lack standing to represent their proposed class. For the same reason, the *Slodki* class argues, the Merchans fail to satisfy the typicality, commonality, and adequacy requirements of Federal Rule of Civil Procedure 23(a). The *Slodki* class argues that because the Merchans have no damages and thus no claim, their claim cannot be typical of the claims of class members. Nor will they adequately represent the class because any recovery will be a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

windfall-hardly a guarantee of vigorous advocacy. The *Slodki* class says the gross shortcomings of the proposed settlement prove this point.<sup>FN2</sup>

> FN2. The *Slodki* class also suggests that the Merchans and defendants have colluded to reach a "ruse" settlement that freezes out the *Slodki* class. This claim of collusion lacks direct support. True, defendants' counsel could not give a satisfactory answer when the Court asked why ARI failed to seek dismissal of Kessler's suit as barred by Kessler's failure to opt out of the *Slodki* class. The Court will not infer collusion from this, however. In addition, the Court asked counsel for Kessler and the Merchans how they came to be his firm's clients and was told that they sought the firm out. Although the *Slodki* class's contention gives the Court pause, especially because defendants' support for the proposed settlement obviously stems from a wish to be rid of the *Slodki* case, the Court takes the attorneys for the settlement proponents at their word and concludes no ruse is afoot.

Conversely, the *Slodki* class contends that the Merchans' own argument for standing makes them members of the *Slodki* class who are barred from asserting their own class claims. The Merchans argue they suffered injuries because they were assessed fees that ARI had no contractual right to impose. Because they lost their eligibility to use defendants' resorts when they failed to pay, the Merchans say, their injury does not depend on payment of the challenged fees. To support this view, both the Merchans' and defendants' counsel construe the passage "assessed and collected maintenance fees" in the *Merchan* class definition disjunctively. That is, either assessment or payment of the fees is a sufficient injury for class membership. The *Slodki* class replies that this reading makes the Merchans members of the *Slodki* class who are barred from bringing a competing class action, assuming the two class definitions are read consistently.

Second, the *Slodki* class argues that the settlement is not within the range of possible approval, the legal standard for preliminary approval. *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980), *overruled on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir.1998). The *Slodki* class gives two reasons why the settlement is unfair. First, it fails to reflect the value of the class's fraudulent transfer and fiduciary duty claims, which the *Slodki* class values at S65 million. Second, the consideration class members would receive under the proposed settlement-grants and vouchers according to the Merchans, coupons according to the *Slodki* class-can be used only at ARIHN's two resorts in Austria. To benefit, class members would have to travel to Austria or sell the vouchers to someone planning to do so.

**\*5** The Merchans argue that they have standing to represent a class of time share owners, relying on the disjunctive reading of the class definition discussed above. (Neither the Merchans nor defendants anticipated the argument that this reading makes the Merchans members of the *Slodki* class.) Both defendants and the Merchans argue that the Rule 23(a) requirements of commonality, typicality, and adequacy are met.

The settlement proponents also argue that the settlement is fair and thus lies within the range of possible approval. Both the Merchans' and defendants' counsel dispute the $65 million value the *Slodki* class attaches to the fraudulent transfer claims.

**1. Preliminary approval of the proposed settlement**

The Court cannot say that the fraudulent transfer claims of the *Slodki* class, although likely worth far less than $65 million, are trivial or lacking in potential merit. As explained below, the proposed settlement, which releases these claims for in-kind consideration only and forecloses recovery in cash of sums that may have been transferred to related entities that are defendants in the consolidated case, is not within the range of possible approval. *See Armstrong,* 616 F.2d at 314.

Counsel for the *Slodki* class more or less conceded at a hearing the Court held on these motions that class members' fraudulent transfer claims could not be worth $65 million. That figure represents the amount the *Slodki* class says ARI transferred to related entities. The transfer does not legally entitle the *Slodki* class members to recover that entire amount; they are not owners of the time share program's assets akin to a corporation's shareholders. Rather, if they prevail on the fraudulent transfer claims, the *Slodki* class would be able to recover from the alleged transferees any amounts due on their underlying claims against ARI as transferor-

specifically, the fees the class claims to have overpaid. At the hearing, *Slodki* class counsel estimated the amount of the overpayment at $5 million to $7 million; in a more recent filing, they say the amount is even lower, something like $1.7 million. That amount, not the $65 million cited in the *Slodki* plaintiffs' briefs, is tire likely outside limit of potential recovery on the fraudulent transfer claims.

That said, the possibility of recovering $1.7 million (plus counsel fees) from third parties, a source of recovery that would not effectively put the burden on the class members themselves, is nothing to sneeze at. In addition, in a recent filing, the *Slodki* plaintiffs emphasize that they have also asserted a claim for breach of fiduciary duty that they contend may entitle them to recover more than just the alleged overpaid assessments. The Court must determine whether a settlement that gives up these claims in return for very modest non-monetary compensation for the class is within the range of reasonableness.

The proponents bear the burden of proving the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e). Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase. *See Armstrong,* 616 F.2d at 314;*In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y.1995) (preliminary approval determines whether the settlement is "possibly fair, reasonable and adequate"). These factors are (1) the strength of the plaintiffs' case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *Isby v. Bayh,* 75 F.3d 1191, 1196, 1199 (7th Cir.1996).

**\*6** Counsel for the *Merchan* class, of course, advocates the settlement, emphasizing the difficulty and uncertainty of any significant recovery for the class members and the fact that sums paid by ARI ultimately will come from the class members' own pockets. In addition, recovery of damages from the defendants other than ARI and ARIHN that the *Slodki* plaintiffs have sued will not be easy, though it has been simplified to some extent by the work done by Felz and Grant Thornton. Counsel for the *Merchan* class has opted in favor of a quicker and easier route to disposition of the case. These factors tend to favor approval of the proposed *Merchan* settlement.

On the other side, the Court must consider the fact that there is significant opposition to the proposed settlement, specifically that expressed by counsel for the already-certified *Slodki* class, which is essentially co-extensive with the *Merchan* class. For this reason, in determining whether to overturn its preliminary approval of the settlement, the Court focuses primarily on the strength of the *Slodki* class's case as compared with the value of the settlement that would eliminate that class's claims. The *Slodki* class's fraudulent transfer claims stem from the examination by Felz and Grant Thornton of ARI's finances, accounting practices, and dealings with its principals and related entities. In its report, Grant Thornton points to opaque and incomplete documentation of advances, loans, and payments from ARIHN to related entities; inconsistent and questionable accounting practices; and lax management of ARIHN with the attendant risk of manipulation. Grant Thornton concludes that ARIHN's accounting system, notably for financial dealings with related entities, "appears to have the effect of obscuring proper reporting transparency."In the report's conclusion, Grant Thornton notes that it was impossible to perform a complete analysis of ARIHN's management systems, internal controls, and dealings with related entities because ARIHN's management did not provide all the documents Grant Thornton requested, in some cases repeatedly. The *Slodki* class's second amended complaint lists a series of advances and other payments from the time share program to related entities that are now defendants in the *Slodki* suit. Though these transactions' value does not total $65 million, it is significant nonetheless.

In short, the *Slodki* class's fraudulent transfer claims rest on the expert opinions of the class's own CPA and Grant Thornton, a disinterested court-appointed CPA. Both paint a picture of accounting opacity, lax internal controls, and at least the potential for manipulation by ARIHN's principals and related entities. Because the latter are now defendants, at least in the *Slodld* case, the location of funds allegedly overpaid by time share members may emerge, and recovery of those funds may become possible. At this stage, the Court cannot say this is unlikely to occur.

**\*7** ARI has also objected to the tone and content of Grant Thornton's report; it goes so far as to say

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                               Page 6
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

that the CPA's work fell below professional standards for the accounting industry. At present, the Court need not assess the merits of this dispute. The Court's task here is to assess preliminarily the fairness, adequacy, and reasonableness of the proposed settlement. Under this standard, the assessment of ARI's management, financial, and accounting practices by Grant Thornton-a reputable, national firm-is enough for the Court to conclude that the proposed settlement is not fair to class members in light of present facts.

Against these claims and the prospect of recovery in cash from defendants other than the time share program itself, the Court must weigh the value of the settlement. "[C]ompensation in kind is worth less than cash of the same nominal value, since, as is typical with coupons, some percentage of the [in-kind consideration] claimed by class members will never be used and, as a result, will not constitute a cost to [defendants]." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir.2006) (*citing In re Mexico Money Transfer Litig.,* 267 F.3d 743, 748 (7th Cir.2001)) (internal quotation marks omitted). The risk that some class members will not benefit from the settlement is acute because the grants and vouchers may be used only by travelers to ARI's Austrian resorts. The prospect of a secondary Internet market for the transferable grants and vouchers does not eliminate the likelihood that some class members would choose not to go to the trouble of selling the certificates online. Particularly if the Internet market for these grants and vouchers were to become saturated after a settlement-a real prospect, given the size of the class and the Austrian resorts' apparent undesirability relative to warmer destinations-a supply-demand imbalance could drive the prevailing price low enough that class members would opt not to bear the transaction costs of selling the grants and vouchers.

For these reasons, the Court vacates its preliminary certification of the proposed settlement. On the present record, the proposed settlement is unreasonably low in value to the class members as compared with the potential value of the claims the class members would be giving up.

**ii. Preliminary certification of the *Merchan* class**

After examining all sides' arguments as to the Merchans' standing and their relationship to the *Slodki* class, the Court also is persuaded that the Merchans do not meet the Rule 23(a) requirements to serve as class representatives and cannot assert class claims that compete with those of the certified *Slodki* class. Accordingly, the Court reverses its preliminary certification of the *Merchan* class.

The Rule 23 requirements of commonality, typicality, and adequacy "demand undiluted, even heightened, attention" when applied to classes for which certification is sought for settlement purposes only. *Amchem Prods. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Smith v. Sprint Commc'ns Co.,* 387 F.3d 612, 614 (7th Cir.2004). Courts must pay careful attention to these criteria at every phase of class actions and may alter conditional orders as the case develops. FED. R. CIV. P. 23(d). Courts' discretion under Rule 23(d) encompasses the preliminary approval of proposed settlements and preliminary certification of classes for settlement purposes. 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.27, at 57 n. 41 (4th ed. 2002) (Rule 23(c)(1) and (d)"are designed to permit a court to rule preliminarily on class certification as early as possible in the litigation, reserving the right later to alter or amend the ruling as appropriate as the case progresses and facts and issues are clarified."). Preliminary certification of a class for settlement purposes "is perhaps best interpreted as tentative certification."*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.,* 834 F.2d 677, 680 (7th Cir.1987) (*citing In re Beef Indus. Antitrust Litig.,* 607 F.2d 167, 177-78 (5th Cir.1979)). Therefore, as information about the commonality and typicality of claims asserted by putative class representatives and their adequacy emerges, courts sometimes are required to revise preliminary class certifications.

**\*8** In the present context, the Court finds persuasive the *Slodki* class's attack on the Merchans' fitness as class representatives. If we accept the Merchans' disjunctive reading of "assessed and collected maintenance fees"-which demands that the Court believe "and" meant "or"-then the Merchans appear to be members of the *Slodld* class. As the *Slodki* class concedes, this requires reading similar operative words in two similar class definitions consistently. (That is, the *Slodki* class's "sought and collected" must likewise mean either of these two is enough for class membership.) The Court agrees the two definitions should be read consistently. Defendants' goal in settling with the Merchans was to conclude all pending litigation, including the *Slodki* litigation. One way they tried to reach this goal was to craft a highly similar class definition, They and the

Merchans now ask the Court to read this definition in a way that keeps the Merchans in their own class. The stratagem appears to backfire, however, because this reading also puts the Merchans in the *Slodki* class: ARTHN apparently sought fees from the Merchans for service improvements in August 1999, some four months after the Merchans joined the time share program. Like Kessler, the Merchans appear never to have opted out of the *Slodld* class-a step they might have taken had they sincerely believed they were injured by the assessment alone. Therefore, under this reading, the Merchans run headlong into the rule that members of a certified class who have failed to opt out of it may not bring competing class claims.[FN3] *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.,* 333 F.3d 763, 769 (7th Cir.2003) (*citing* *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n Inc.,* 814 F.2d 358 (7th Cir.1987)).

> FN3. Although the *Slodki* class was certified in state and not federal court, defendants' removal of the case to federal court triggered 28 U.S.C. § 1450, *See* *Payne for Hicks v. Churchich,* 161 F.3d 1030, 1037-38 (7th Cir.1998). This statute provides that all state court orders issued prior to removal shall remain in full effect until dissolved or modified by the district court. The Court has not been asked to revisit the Dlinois chancery court's 2003 decision to certify the *Slodki* class.

If, on the other hand, the Court reads "and" in the proposed class definition to mean "and," the Merchans have no claim, since defendants could not have collected maintenance fees the Merchans never paid. This would destroy the commonality and typicality of their claims, because the claims themselves would be a nullity.

Because of the problems presented by the Merchans' attempt to assert class claims under either interpretation of the *Merchan* class definition, the Court reverses its preliminary certification of the *Merchan* class.

**B.** *Slodki* **removal / remand issues**

The defendants removed the *Slodki* case to federal court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § § 1332(d) & 1453. Section 1453 permits removal of a class action, as defined in 28 U.S.C. § 1332(d), with certain exceptions that do not apply in this case. Section 1332(d) provides that a federal court has jurisdiction of a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and any member of the plaintiff class is (among other alternatives) a citizen of a state different from any defendant, or is a citizen of a state and any defendant is a citizen or subject of a foreign state. 28 U.S.C. § 1332(d)(2).

**\*9** CAFA applies only to actions commenced after its effective date of February 18, 2005. *See*Pub.L. 109-2, 119 Stat. 4, § 9 (2005). The *Slodki* case was originally filed in state court prior to that date. In April 2007, however, the *Slodki* plaintiffs added a number of new defendants to the case, along with the new fraudulent transfer claims that the Court discussed earlier in this decision. The addition of the new defendants allowed those defendants to remove the case to federal court on the theory that the suit against them commenced after CAFA's effective date. *See, e.g., Schillinger v. Union Pacific R. Co.,* 425 F.3d 300, 333 (7th Cir.2005).

The *Slodki* class members are citizens of Illinois, Indiana, and at least eighteen other states. The defendants' notice of removal, including amendments made after the Court questioned its sufficiency, states that of the 6,304 class members, 2,308 are citizens of states other than Illinois. 3rd Am. Not. of Removal ¶ 15. The citizenship of the defendants is claimed to be as follows:

  - American Resorts International, Ltd.-unknown
  - American Resorts International's Holiday Network Ltd.-unknown
  - Sonnenschein Marketing Services, LLC-Illinois
  - Sonnenschein Financial Services, LLC-Illinois
  - Global Employee Management Services, LLC-Illinois
  - Target Marketing of Illinois, Inc.-Illinois
  - International Resorts, L.P.-Illinois and Delaware
  - Oyster Bay Club, N.V.-Netherlands Antilles and, perhaps, Delaware and Illinois
  - Alpenland Resort Ltd. Limited Partnership-Illinois, California, Colorado, Connecticut, Iowa, Michigan, Ohio, and Virginia
  - Walter N. Kosch-Illinois
  - Thomas Lupina-Illinois
  - Robert Pioso-Illinois

Despite the fact that the Court directed them to do so, the removing defendants have provided the

Slip Copy                                                                                                Page 8
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

Court with no information regarding the citizenship of ARI or ARIHN, the defendants originally named in the *Slodki* case. That, however, is of no consequence in determining whether the case was removable under CAFA; it is clear, and undisputed, that at least one member of the plaintiff class has citizenship different from at least one defendant. In any event, based on the Court's own review of Illinois' on-line corporate record database, both ARI and ARIHN were incorporated in Delaware, and mere is a high probability that the principal place of business of each entity is Illinois (corporate records list defendant Lupina, an Illinois citizen, as the president of both entities).

The *Slodki* plaintiffs question whether CAFA's $5,000,000 amount-in-controversy requirement is met. They state, in their response to the removing defendants' third amended notice of removal, that the amount in controversy on their claims for breach of contract and violation of the Illinois Consumer Fraud Act is a bit over $3 million, consisting of damages of approximately $1.76 million and approximately $1.3 million in attorney's fees to date, which are recoverable under the ICFA if the *Slodki* plaintiffs prevail. The *Slodki* plaintiffs' complaint also contains eight fraudulent conveyance claims and a claim for breach of fiduciary duty. As the Court has previously discussed, recovery on the fraudulent transfer claims likely is limited to the amounts due on the underlying principal claims. The *Slodki* plaintiffs' position is that on the fiduciary duty claim, the amount in controversy is $65 million. But they say that if the Court concludes (as it suggested at a recent hearing on whether to reconsider the preliminary approval of the proposed *Merchan* settlement) that the available damages on the fiduciary duty claim are limited to the amount of the class members' alleged overpayments, then the amount in controversy is only the same $3 million or so available on the other claims, less than CAFA's $5 million threshold.

**\*10** The proponent of federal jurisdiction has the burden of persuasion on the amount in controversy; this rule is the same under CAFA as in ordinary diversity-of-citizenship cases. See *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 447-48 (7th Cir.2005). To carry this burden in the removal context, the removing litigant "must show a reasonable probability that the stakes exceed the minimum." *Id.* at 449.But this does not require him to prove that a favorable judgment for the plaintiff will exceed the statutory threshold; rather, "[t]he demonstration concerns what the plaintiff is claiming ..., not whether plaintiff is likely to win or be awarded everything he seeks."*Id.* at 448, 449.Unless there is a "legal certainty" that the judgment will be less, the amount in controversy requirement is satisfied.*St. Paul Mercury Indent Co. v. Red Cab Co.,* 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Brill,* 427 F.3d at 448.

The removing defendants have carried their burden in this case. The *Slodki* plaintiffs claimed before the removal, and still claim, that they are entitled to recover $65 million. The Court cannot say to a legal certainty that they will be unable to do so. In their response to the defendants' third amended removal notice, the *Slodki* plaintiffs contend that they are entitled to a judgment not just in the amount of the excess assessments, but in the amount of *all* the assessments paid by the class members, on the theory that certain defendants breached a fiduciary duty in misapplying those assessments. See *Slodki* Class' Resp. to Defs.' Third Am, Not. of Removal at 2-3. The Court's doubt that the plaintiffs actually will be able to obtain a judgment in that amount does not amount to the legal certainty necessary to defeat jurisdiction, [FN4]

> FN4. The Court also notes that were it to conclude on this basis that the jurisdictional minimum is not met and for that reason remanded the case to state court, the *Slodki* plaintiffs would be free to argue in that court for a judgment in excess of the CAFA threshold, thus making the case once against removable. A remand on this basis would make no sense.

The *Slodki* plaintiffs have also moved the Court to abstain from exercising its jurisdiction and remand their case to state court pursuant to 28 U.S.C. § 1332(d)(3). Under that provision of CAFA,

[a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under [28 U.S.C. § 1332(d)(2) ] over a class action in which greater th an one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of-

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                      Page 9
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

**\*11** (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3). The *Slodki* plaintiffs bear the burden of showing that abstention is appropriate. *See Breuer v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 698, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003) (burden of showing exception to removal lies with party claiming exception); *Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc.,* 457 F.3d 804, 812 (5th Cir.2007) (burden of showing propriety of remand under § 1332(d)(3) lies with party seeking remand); *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1023-24 (9th Cir.2007) (same).*See also, Hart v. FedEx Group Package Syst., Inc.,* 457 F.3d 675, 60-81 (7th Cir.2006) (burden of showing propriety of mandatary remand under § 1332(d)(4) lies with party seeking remand).

The *Slodki plaintiffs* have presented a strong case for abstention under § 1332(d)(3). First, the *Slodki* case does not involve, to any significant extent, matters of interstate interest: over sixty-three percent of the class members are Illinois residents, all the class members were solicited by Illinois or Illinois-related entities, and the claims involve matters of state law with no significant national implications-at least none that the defendants have pointed out. Second, defendants do not dispute that the *Slodki* plaintiffs' claims will be governed by Illinois law. Third, though defendants suggest that the *Slodki* plaintiffs have altered then damage theory to avoid federal jurisdiction, the Court disagrees: they have simply picked up on comments the Court made (with which they disagree) and have noted that if the Court is correct, then the jurisdictional minimum may be lacking. Fourth, the *Slodki* action unquestionably was brought in a forum with a distinct nexus to the class members, the alleged harm, and the defendants: nearly two-thirds of the plaintiffs live in Illinois and th us suffered any alleged injury here, and all of the defendants are either Illinois citizens, or have strong connections to Illinois, or both. Fifth, it is undisputed that the number of plaintiffs from Illinois far exceeds the number from any other state: the second largest group of plaintiffs is from Indiana, but Indiana residents constitute only under thirteen percent of the class members, as compared with the sixty-three percent who live in Illinois. And sixth, there have been no other class actions arising from the defendants' alleged wrong, other than the *Merchan* case, which was filed only after *Slodki* had been pending for several years in state court. Thus this does not present a situation in which assertion of federal jurisdiction by this Court might facilitate consolidation of multiple class actions brought in different forums pursuant to the multidistrict litigation provisions of 28 U.S.C. § 1407.

In their response to the motion to remand, the defendants do not seriously contest any of these factors. Rather, their primary contention is that the case has been mismanaged in state court and that this counsels in favor of retention of federal jurisdiction. The Court would be remiss if it did not say that certain events in the *Slodki* litigation give legitimate cause for concern whether the attorneys for the plaintiff class have taken adequate steps to protect their clients' interests. The case has been pending in state court for nearly five years but appears to be nowhere near resolution. Attorneys for the class obtained, or at least did not oppose, entry of an order directing ARI and ARIHN to pay some $230,000 in fees to Butler and Grant Thornton, with no indication th at either entity has any source for payment of those funds other than what it might be able to raise from the owners of time share interests-i.e., the members of the *Slodki* class themselves. Though the *Slodki* class ultimately might recover funds allegedly transferred to the other defendants, in the near term the burden of this expense may well fall on the *Slodki* plaintiff class. One can reasonably suggest that it would have made more sense, given these factors as well as the class attorneys' fiduciary duty to the class members, for class counsel to bear any investigatory expense as part of the ordinary costs of litigation, a course likely to have encouraged greater economization as well a more promptly obtained result. But all of that said, nothing in § 1332(d)(3) or its legislative history suggests that in determining whether to abstain from exercising federal jurisdiction, a federal court should take into account how well the case has been managed in state court or by the attorneys for the plaintiff class. *See*S. Rep. 14, 109th Cong., 1st Sess. 43 (2005), 2005 U.S.C.C.A.N. 3, *cited in Hart,* 457 F.3d at 681.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4105204 (N.D.Ill.)
**(Cite as: Slip Copy)**

Page 10

**\*12** In sum, the Court concludes that the *Slodki* plaintiffs have carried their burden of showing that permissive abstention under § 1332(d)(3) is appropriate. The Court therefore remands the *Slodki* case to the Circuit Court of Cook County. As a result, the Court need not consider Butler's motion seeking immediate payment of fees to himself and Grant Thornton and therefore terminates that motion as moot.

### Conclusion

For the reasons stated above, the Court grants the motion to reconsider its preliminary approval of the class settlement and Case No. 05 C 5944 [docket no. 85] and vacates its preliminary certification of the *Merchan* class and its preliminary approval of the proposed settlement in that case. The Court also terminates as moot Frank Butler's motion for an order directing payment of his and Grant Thornton's accumulated fees. The Court grants the *Slodki* plaintiffs' motion to remand Case No. 07 C 2439 [docket no. 109] and directs the Clerk to remand that case to the Circuit Court of Cook County, Illinois and to terminate the case. Case No. 05 C 5944 is set for a status hearing on November 30, 2007 at 9:30 a.m. to address how th at case should proceed from here. Among other things, counsel should be prepared to address the question of the standing of Kessler and the Merchans in light of the fact that they are members of the certified *Slodki* class.

N.D.Ill.,2007.
Kessler v. American Resorts International's Holiday Network, Ltd.
Slip Copy, 2007 WL 4105204 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.